OPINION OF THE COURT
Roger J. Miner, J.
The regulations of the Department of Correctional Services include the following provision: "Mechanical means of physical restraint must never be used for disciplinary purposes. Mechanical means of physical restraint may be used only when necessary while transporting inmates within or outside of the facility, or on orders of a physician when he deems it *137 necessary to prevent injury to the inmate or to others.” (7 NYCRR 250.2 [h].) In this proceeding the petitioners challenge the constitutional validity of this provision. They also assert that they have been manacled at times other than during transportation, and that such use of mechanical restraints is arbitrary, capricious, unlawful and an abuse of discretion.
It appears that petitioner Roudette was sentenced to confinement for 365 days in a special housing unit as the result of a disciplinary proceeding wherein he was charged with assault at the Eastern New York Correctional Facility at Napanoch, New York. Roudette is in the custody of the Department of Correctional Services by virtue of his sentence to a term of imprisonment (25 years to life) for the crime of murder. Shortly after the disciplinary proceeding at Napanoch, Roudette was transferred to the Great Meadow Correctional Facility. According to the petition, Roudette was informed by a correction officer at Great Meadow, on July 13, 1979, that he would be subject to mechanical means of restraint while out of his cell. The restraint consisted of handcuffs attached to a belt secured around the waist. Roudette claims that he was not charged with violation of any rules at Great Meadow nor was he involved in any violent incidents there. He also claims that he was not interviewed by a physician at Great Meadow, that he never was given notice or hearing respecting the reasons for the manacling, and that he was informed that the restraints would be continued for an indefinite period of time without being advised of the conditions to be met for the removal of the restraints.
It appears that petitioner Roberts was sentenced on June 29, 1979 to confinement for 180 days in a special housing unit as the result of a disciplinary proceeding wherein he was charged with assault at Great Meadow. Roberts is in the custody of the Department of Correctional Services by virtue of his sentence to a term of imprisonment (15 years to life) for the crime of murder in the second degree. On July 4, 1979, he was involved in an altercation with several correction officers searching his cell in the special housing unit. Following his altercation, he was placed in mechanical restraints similar to those applied to petitioner Roudette. Roberts also claims that he was not interviewed by a physician, that he was never given notice or hearing respecting the reasons for his manacling, and that he was informed that the restraints would be continued for an indefinite period of time without being *138 advised of the conditions to be met for the removal of the restraints.
A verbal order for the use of the restraints upon petitioner Roudette was issued by the Deputy Superintendent for Security at Great Meadow. According to the Deputy Superintendent, the order was based upon records showing Roudette to be "highly assaultive.” A similar order was issued as to petitioner Roberts, based upon the assault of July 4, 1979 and upon an "extensive history of assaulting employees.” The Deputy Superintendent makes the following allegation as to each petitioner: "It was my intent to continue this order for a period of three or four weeks, and if petitioner behaved himself, either I or a Captain would then advise petitioner that the restraint would be removed and would be reinstituted if he became assaultive, toward another employee.”
Petitioner Roberts was transferred to Elmira Correctional Facility on July 27, 1979, and the restraints were removed from petitioner Roudette on July 26, 1979 "because he exhibited a good attitude.” Accordingly, respondents contend that the proceeding has been rendered moot. In any event respondents contend that the use of the manacles in the cases of the two petitioners was a reasonable exercise of their authority for the protection of employees and inmates in the prison system. They further contend that the restraints applied to petitioners were not designed to effect punishment but to maintain institutional security. (Bell v Wolfish, 441 US 520.)
 The contention that the proceeding at bar has become moot is rejected, in light of respondents’ assertion that they are entitled to continue the use of mechanical restraints in nontransportation cases and in cases where a physician has not ordered the restraints. Indeed, it appears that other prisoners at Great Meadow have been subjected to such restraints since the commencement of this proceeding. Where questions of importance likely to recur have been raised, a proceeding cannot be dismissed for mootness. (Matter of Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368; Matter of Jones v Berman, 37 NY2d 42; Matter of New York Tel. Co. v Public Serv. Comm. of State of N. Y., 56 AD2d 415.) The petitioners clearly have demonstrated violations of the regulations regarding the application of mechanical means of physical restraint. In the factual context presented the petitioners were subjected to the restraints under *139 circumstances not involving their transportation and not involving the orders of a physician. The regulation adopted by the Commissioner of Correctional Services respecting mechanical means of physical restraint represents a proper exercise of the commissioner’s authority. (Correction Law, § 112.) Accordingly, the failure of respondents to comply with the regulation is arbitrary, capricious and unreasonable. (1 NY Jur, Administrative Law, § 110.)
In view of the foregoing the court need not reach the constitutional questions raised by petitioners. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150.)
Submit judgment for petitioners on notice to the Attorney-General.