Cooke, J.
These three cases, involving common questions of law, have been consolidated for purposes of our disposition. The central issue presented by the several petitioners is whether subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR 372.2 [c]) is invalid and void in that it conflicts with State and Federal law regarding the prerequisites necessary to obtain emergency monetary relief. The above regulation provides that emergency assistance, pursuant to the State statute (Social Services Law, § 350-j), cannot be granted where the destitution of a child and his family is occasioned by the loss, theft or diversion of a grant of aid previously made.

Jones

Petitioner Jones was a recipient of public assistance in the *49 Aid to Dependent Children category from the Westchester County Department of Social Services. Other than benefits obtained from social security, this assistance formed the family’s only source of income. On May 1, 1973, Jones cashed her monthly grant of $398 at a local bank and purchased food stamps in the amount of $98. Shortly after placing the stamps and the remaining cash into her pocketbook, the pocketbook was stolen. The theft was reported to local police officials and to the Westchester County Department of Social Services. Later that day, Jones asked the department to replace the money that had been stolen so that she might purchase those items necessary for her two children and three grandchildren during the remainder of the month. The next day, the department granted her request only to the extent of $267 and denied any further relief. The department was of the opinion that the providing of relief in the form of a duplication of a grant already made was solely within its discretion (18 NYCRR 352.2 [d])..
Being dissatisfied with the failure of the department to furnish the requested funds, despite the claimed destitution of her family, Jones sought a grant for Emergency Assistance to Needy Families with Children. The department, in denying this relief, set forth two reasons: that the caseworker’s manual employed by the county specifically prohibited emergency assistance where a child in the family is eligible for Aid to Dependent Children; and that, under the regulations of the department, such aid was unavailable where the destitution resulted from the theft of an earlier grant (18 NYCRR 372.2 [c]). The department also refused Jones an immediate and preferred hearing.
Without exercising her right to request a fair hearing pursuant to the department regulations, Jones commenced an article 78 proceeding alleging that the additional requirements of subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York conflicted with the State statute (Social Services Law, § 350-j) and Federal provisions (US Code, tit 42, § 606, subd [e]; 45 CFR 233.120) regarding emergency relief and, further, that the denial of an expedited hearing violated her right to procedural due process. The proceeding was initiated as a class action on behalf of all persons in this State who were denied emergency relief on the basis of subdivision (c) of section 372.2 of title 18 of the Official Compilation of *50 Codes, Rules and Regulations of the State of New York and all persons of this State who were not afforded an expedited hearing upon making application for such assistance. Like contentions were made on behalf of all people in Westchester County similarly situated.
In the opinion of Special Term, the regulation in question, being both arbitrary and unlawful, was void. Relying upon Matter of Young v Shuart (39 AD2d 724), it was held that an expedited procedure must be established by the State and local agencies to conform with due process. The court also determined Jones to be a fair representative of the entire class. The Appellate Division modified this decision by holding that although the suit was properly commenced as a class action, the judgment below described too broadly the class of persons that could be represented. It limited the class, therefore, to those people living in Westchester County similarly situated.

Gipson and Domine

Petitioner Gipson was a victim of the same circumstances as Jones. After having cashed her check, she entered a supermarket in the City of Albany. The money was subsequently stolen, leaving her without financial resources to buy food or to pay her gas and electric bill. Requests to the department in Albany County for emergency assistance to protect the family from destitution met with denials without the benefit of a hearing, and were premised upon subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York.
A different situation is presented by petitioner Domine. She, like petitioner Gipson, was the recipient of public assistance as part of a Federal program, Aid to Dependent Children. Her rent and fuel bills were paid directly by the Department of Social Services for Albany County and she received $80.50 in semimonthly installments. Rather than being the victim of larceny, Domine merely failed to budget her income wisely and five days prior to the expected receipt of her next check, she was without funds. Emergency relief was sought, but summarily denied.
Both Domine and Gipson initiated article 78 proceedings which were subsequently consolidated. The allegations asserted were materially the same as those found in the Jones *51 petition, and class action relief was likewise sought. Supreme Court on constraint of Matter of Young v Shuart (supra), granted the relief requested. On appeal, however, the Third Department (44 AD2d, at p 101) modified the judgment "so as to grant relief only to the extent of providing that the interim ordered assistance by the court is not subject to reimbursement and by annulling the determinations that the infants were not entitled to emergency assistance”. In so modifying, the findings of Special Term that this was properly a class action and that an expedited hearing was necessary were rejected. Two Justices, while concurring in the result, stated that in their view the mandates of due process require the County Departments of Social Services to afford each subsequent petitioner in a similar dilemma a hearing prior to the adjudication of the availability of emergency assistance.

Disposition

Turning our attention to the merits of the instant appeals, the primary issue, as previously stated, is whether subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York conflicts with section 350-j of the Social Services Law because of an addition in the regulation not contemplated by the State statute. We hold that such a conflict does exist and, therefore, that the regulation, as presently written, is invalid.
Section 350-j of the Social Services Law provides that:
"1. Any inconsistent provisions of this chapter or of any other law notwithstanding, so long as federal aid is available therefor, a social services district shall provide emergency assistance as herein defined to persons eligible, including migrant workers with families.
"2. The term 'emergency assistance’ means aid, care and services furnished for a period not in excess of thirty days in any twelve month period, in the case of a needy child under the age of twenty-one who is living with a person related to him by blood, marriage or adoption who is eligible to receive aid to dependent children on his behalf pursuant to this chapter and regulations of the department.
"3. Emergency assistance to needy families with children shall be provided in accordance with the regulations of the department for children who are without available resources, and when such assistance is necessary to avoid destitution or to provide them with living arrangements in a home, and such destitution or such need did not arise because such children or relatives refused without good cause to accept employment or training for employment.
"4. Such department regulations may make provision for aid to be provided under this section in appropriate cases, when grants for aid to *52 dependent children have been discontinued and fair hearings have been requested.”
The above provision was enacted so that New York might combine with the Federal Government to grant assistance to families in times of urgent need. The plan, devised initially on the Federal level, was designed to subsidize the "Aid to Families With Dependent Children Program” (AFDC) as another portion of the "scheme of cooperative federalism” (see King v Smith, 392 US 309, 316), stemming from the Social Security Act of 1935. The phraseology and requirements existent in section 350-j of our Social Services Law reflect the applicable Federal provisions (US Code, tit 42, § 606, subd [e]; 45 CFR 233.120).
In section 350-j of the Social Services Law, the Legislature lists five requirements that must coexist before an applicant is entitled to emergency assistance: (1) Federal aid must be available; (2) the needy child must be under 21 years of age; (3) the child must be living with a person related to him or her by blood, marriage or adoption; (4) the assistance must be necessary to avoid destitution; and (5) the destitution must not have arisen because the child or relative refused without good cause to accept employment. The same requirements must be established under Federal law (US Code, tit 42, § 606, subd [e]; 45 CFR 233.120).
In 1969, the State Commissioner of Social Services added subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York to the regulations already promulgated to implement the State program. It unconditionally provided that: "(c) Emergency assistance shall not be provided when destitution is due to loss, theft, or diversion of a grant already made.”
The intent of the commissioner in adopting the regulation was undoubtedly to prevent future court decisions such as Matter of Preston v Barbaro (61 Misc 2d 327, affd 34 AD2d 809) and Matter of Ross v Barbaro (61 Misc 2d 147), which had authorized emergency relief where the claimed destitution was occasioned by the theft of the proceeds of grants already made. Whatever benefits the commissioner may have sought to effect by the adoption of said regulation, whether to reduce or eliminate fraudulent claims that could easily be alleged and rarely disproven or otherwise, the summary denial of assistance without regard to the honesty of the loss or the *53 actual destitute circumstances of the people intended to be protected by the act, was both arbitrary and capricious. Significantly, the regulation adds a requirement that does not exist either under State or Federal law. Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute (Manhattan Co. v Commissioner, 297 US 129; Miller v United States, 294 US 435; Matter of Gold [Corsi], 307 NY 224, 228; Matter of Federal Tel. & Radio Corp. [Corsi], 301 NY 95, 99; cf. Hagans v Lavine, 415 US 528). We conclude, therefore, that by adding a requirement not found in the existing State statute, the regulation as presently written is invalid. By this finding, we need not reach the issue of whether it also is violative of the Federal provisions.
The Federal Government has given each State considerable latitude in the disbursement of its available funds (Burns v Alcala, 420 US 575; Dandridge v Williams, 397 US 471, 478; King v Smith, 392 US 309, supra) and in the determination of eligibility for public assistance (Rosado v Wyman, 397 US 397, 408). This State, by its participation in the emergency assistance plan has adopted a public policy of furnishing immediate aid to individuals finding themselves in emergency situations. At the same time, the tremendous expense of this program places the burden upon the State, and its agents, to avoid the payment of grants to persons who are undeserving. Consequently, the State should constantly stand guard to insure that fraudulent claims are not honored. The regulation in question, while it furthered State policy, overstepped permissible limits by denying relief to all applicants, irrespective of how demonstrable the proof might be of their destitute circumstances.
The other contentions raised by the commissioner relating to this issue deserve discussion. First, it is argued that the assistance sought herein is not emergency relief, but rather, is a duplication of a grant previously made and, as such, should be governed by subdivision (d) of section 352.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York which provides that: "Supplemental allowances and grants may not be made other than as authorized under the regulations nor in excess of established schedules. A special allowance and grant may be made to duplicate a grant already made because the cash has been lost or stolen; such *54 duplicate allowance and grant is not reimbursable by the State.” (Emphasis added.)
The commissioner asserts that pursuant to said section the decision to provide assistance rests in his discretion. We do not agree that the applications presented herein are merely for duplicate assistance and, therefore, find the above section inapplicable. The distinction existing between the terms "emergency” and "duplicate” was persuasively set forth by the Second Department in Matter of Borders v Nassau County Dept. of Social Servs. (34 AD2d 805, 806): "Petitioner was not, strictly speaking, seeking a duplication of an earlier grant. Requests for duplications do not arise only in emergency situations. Since in an emergency the concern is to find a specific way in which to alleviate the crisis rather than to duplicate a grant, it would appear that emergency relief pursuant to section 350-j can be made available in selective situations without disturbing the non-duplication provisions of the above-mentioned recent amendments. Had the Legislature desired to terminate the obligation of social service districts, it is not likely that it would have done so only by implication.” (See, also: Matter of Young v Shuart, 39 AD2d 724, supra; Matter of Nazario v New York City Comr. of Social Servs., 37 AD2d 630; Matter of Bates v Wyman, 36 AD2d 854; Matter of Lawson v Shuart, 67 Misc 2d 98.)
The county commissioners next argue that the State commissioner has consistently treated the granting of relief, in situations similar to the ones at bar, as duplicate assistance for which the county cannot obtain reimbursement. They assert that a county has no obligation to allocate funds for which no reimbursement will be forthcoming. This contention, however, cannot withstand constitutional and statutory analysis. Subdivision 8 of section 153 of the Social Services Law does provide that: "Any inconsistent provision of the law or rules of the board and regulation of the department notwithstanding, state reimbursement shall not be made for any expenditure made for the duplication of any grant and allowance for any period.” The counties of this State, however, may not shirk their responsibility to provide assistance to destitute persons merely because the higher levels of government refuse to share the cost. Our Constitution (art XVII, § 1) declares: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legisla *55 ture may from time to time determine.” The Legislature has stipulated: "each public welfare district shall be responsible for the assistance and care of any person who resides or is found in its territory and who is in need of public assistance and care which he is unable to provide for himself’ (Social Services Law, § 62, subd 1; see, also, Social Services Law, § 131, subd 1). This aid is subject to reimbursement in cases for which there is specific statutory provision. It is clear that the county’s duty to provide assistance is not dependent upon the receipt of equivalent money from the State and the cases have so held (Matter of Lawson v Shuart, 67 Misc 2d 98, supra; Matter of Preston v Barbaro, 61 Misc 2d 327, affd 34 AD2d 809, supra; Matter of Ross v Barbaro, 61 Misc 2d 147, supra). The question of whether a county is entitled to reimbursement under the facts as herein presented is not before us, nor is it reached. Its duty to provide relief is, however, beyond doubt.
We turn next to the problem of whether the hearing procedures established by the State commissioner meet the requisites of due process. Under present regulations, an applicant for emergency assistance has no right to a conference with local agency officials to discuss the situation, such informal hearing being restricted to cases of the discontinuance or reduction of assistance payments, medical assistance authorization or food stamp participation (18 NYCRR 358.8 [b]). However, an applicant who has been denied relief is permitted a fair hearing and must notify the department, within 60 days from the date of the action complained of, that such a hearing on the issue is desired (18 NYCRR 358.5). Such hearing must be conducted and a decision rendered within 90 days, the limitation having been 60 days when the present proceedings were instituted (18 NYCRR 358.18 [a]).
It is undisputed that due process is violated unless the opportunity to be heard is afforded at a meaningful time and in a meaningful manner (Fuentes v Shevin, 407 US 67; Armstrong v Manzo, 380 US 545; Mullane v Central Hanover Trust Co., 339 US 306). The commissioners agree with this principle, but forcefully urge that the established procedures are in sufficient compliance with the constitutional dictates. Petitioners, on the other hand, contend that only an expedited hearing procedure will provide the necessary vehicle to insure that a destitute child will receive the aid when needed.
We agree with petitioners’ position that an expedited hear *56 ing procedure is necessary. The-situation here is distinguishable from that in Goldberg v Kelly (397 US 254), where the Supreme Court held that the hearing to terminate welfare benefits must transpire before the "deprivation” of the property right. There is no property right involved in the granting of emergency relief. Petitioners are not being deprived of something that is presently enjoyed (see Perry v Sindermann, 408 US 593; Board of Regents v Roth, 408 US 564; Bell v Burson, 402 US 535); emergency relief is a mere "expectancy” for which due process protections do not, by necessity, attach (Arnett v Kennedy, 416 US 134; cf. Matter of Meschino v Lowery, 31 NY2d 772).
Notwithstanding the preceding analysis, the rationale of Goldberg is compelling. The lower court’s use of the term "brutal need” (p 261) and the statement that "the crucial factor * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits” (397 US, at p 264) are relevant to the consideration here. The fair hearing procedure, although adequate to satisfy aggrieved parties in most instances, lacks the immediacy that situations involving emergencies warrant. It is of little consequence for a child and his family without financial resources and faced with possible starvation, to learn that some 90 days after the request (see 18 NYCRR 358.18 [a]), relief is granted, if at all. The claimed emergency, if any, may have passed or the applicants may have hungered or otherwise suffered greatly.
In reaching the conclusion that an expedited procedure is the only feasible method to assure prompt relief, we understand fully the administrative difficulties that are imposed thereby upon the commissioners, both in the incurment of increased expenses and in the assignment of staff. The expense and inconvenience are outweighed, however, by the urgent need for a meaningful hearing at a meaningful time (Stanley v Illinois, 405 US 645; Bell v Burson, 402 US 535, supra; Goldberg v Kelly, 397 US 254, supra).
Rather than fashioning the procedure to be utilized, we remit the cases to the State Commissioner of Social Services with directions to formulate a plan consistent with our view, recognizing that he has the expertise and working knowledge of the practicalities involved. In this manner both the overriding State policy and the day-to-day functioning of the Department of Social Services can best be accommodated.
*57 There is still another aspect of the case that merits comment. The availability of class action relief has only recently been the subject of a lengthy exposition which expanded its acceptance in the courts of this State (Ray v Marine Midland Grace Trust Co., 35 NY2d 147). Without detracting from that opinion, or the modern concept of class actions, in this particular situation, where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of stare decisis (Matter of Rivera v Trimarco, 36 NY2d 747), we are of the opinion that class action relief is not necessary.
Finally, in each of .the cases before us the various petitioners have received assistance subject to reimbursement pending the outcome of the appeal. Although the doctrine of mootness has not been specifically raised or explicitly pleaded, to remove all doubt we state that the questions presented, being of importance and interest and because of the likeliness that they will recur, are properly entertainable by this court, irrespective of any allegation of mootness (Matter of Oliver v Postel, 30 NY2d 171, 177; East Meadow Community Concerts Assn. v Board of Educ. of Union Free School Dist. No. 3, 18 NY2d 129, 135; Matter of United Press Assns. v Valente, 308 NY 71, 76; Matter of Rosenbluth v Finkelstein, 300 NY 402, 404).
In the Jones matter, the order of the Appellate Division, Second Department, is modified: (1) by striking the remainder of the third decretal paragraph, including subdivisions B and C thereof, of the judgment of the Supreme Court, Westchester County, dated August 21, 1973; (2) by striking the fourth and fifth decretal paragraphs from said judgment; and (3) by remitting the matter to the State Commissioner of Social Services with a direction to institute and establish within a reasonable time, not to exceed 60 days, regulations and procedures providing for immediate and preferred hearings and expedited appeals upon denial of emergency assistance grants to applicants therefor throughout the State of New York; and, except as so modified, said order is affirmed, without costs.
In the Gipson and Domine matters, the order of the Appellate Division, Third Department, is modified: (1) by striking from the decretal paragraph thereof the provisions reading "so as to grant relief only to the extent of providing that the interim ordered assistance by the court is not subject to reimbursement” and "by denying further relief to the pe *58 titioners”; (2) by providing that the petition of Judy Domine and the amended petition of Betty Gipson are granted to the extent indicated by this decretal paragraph; (3) by providing that the provisions of subdivision (c) of section 372.2 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York be declared null and void; and (4) by remitting the matters to the State Commissioner of Social Services with a direction to institute and establish within a reasonable time, not to exceed 60 days, regulations and procedures providing for immediate and preferred hearings and expedited appeals upon denials of -emergency assistance to applicants therefor throughout the State of New York; and, except as so modified, said order is affirmed, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
In Matter of Jones v Berman: Order modified, without costs, and matter remitted to Supreme Court, Westchester County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
In Domine v Schreck and Gipson v Schreck: Order modified, without costs, and matters remitted to Supreme Court, Albany County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.