In the Matter of CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., Appellant, v HAROLD NEWMAN et al., Constituting the Public Employment Relations Board, et al., Respondents. EDWARD D. COHEN et al., Proposed Intervenors-Appellants.

Third Department, January 17, 1980

**APPEARANCES OF COUNSEL**

*Roemer & Featherstonhaugh (James W. Roemer, Jr., Richard L. Burstein, Marjorie E. Karowe* and *Michael J. Smith* of counsel), for appellant.

*Hinman, Straub, Pigors & Manning (Bartley J. Costello, III,*

and *J. Michael Harrison* of counsel), for proposed intervenors-appellants.

*James R. Sander (Susan Bloom Jones* and *Nancy E. Hoffman* of counsel), for respondents.

### OPINION OF THE COURT

MAHONEY, P. J.

On August 31, 1977 the Public Employees Federation (PEF) filed a petition for decertification of the Civil Service Employees Association (CSEA) as the exclusive bargaining representative for the Professional, Scientific and Technical Services Bargaining Unit (PS & T unit) and certification of PEF as its bargaining agent. The Director of Public Employment Practices and Representation ordered an election in the PS & T unit which was conducted by CSEA in April of 1978 and won by PEF. Thereafter, a hearing was held to resolve objections filed by CSEA concerning the manner in which the election was conducted. All objections were overruled by the director, and the Public Employment Relations Board (PERB), on September 27, 1978, affirmed the director's decision and certified PEF as the representative of the PS & T unit. In connection with an article 78 proceeding to review PERB's order, CSEA applied for a stay. Special Term granted the stay and provided, *inter alia,* that during the course of the litigation CSEA was to supply representational services to the PS & T unit, and, further, that all funds collected under the statute (Civil Service Law, § 208) were to be placed in escrow with the State Comptroller. This court continued the stay by orders dated October 12, 1978 and January 11, 1979 *(Matter of Civil Serv. Employees Assn. v Newman,* 66 AD2d 38), but on March 27, 1979 the Court of Appeals ultimately resolved the underlying proceeding by directing the reinstatement of PERB's order certifying PEF *(Matter of Civil Serv. Employees Assn. v Newman,* 46 NY2d 1005). PEF's motion in this court to vacate the stay gave rise to the posited issue as to entitlement to the escrowed moneys deposited with the Comptroller before the date of the Court of Appeals decision. We referred the matter to Special Term which (1) granted the motion to vacate the stay and for release of the moneys to PEF, (2) denied CSEA's cross motion for an order directing that the same funds be released to that union, and (3) denied the motion of four individuals, on behalf of themselves and others similarly situated, for permission to intervene and for an order direct-

ing the return of the escrow funds to those members of the PS & T unit from whose salaries said funds were deducted. CSEA and the proposed intervenors appealed.

■ A certified employee organization is entitled to membership dues deductions from the salaries of its members (Civil Service Law, § 208, subd 1, par [b]) as well as agency shop fees (Civil Service Law, § 208, subd 3, par [a]). PEF, when certified as the exclusive bargaining agent for the PS & T unit on September 27, 1978, became immediately entitled to receive such dues and fees. The stay issued by Special Term and continued by this court did not decertify PEF, but merely stayed any action by that union as the certified employee organization. When the Court of Appeals modified this court's decision *(Matter of Civil Serv. Employees Assn. v Newman,* 46 NY2d 1005, *supra)* and reinstated PERB's order of certification, all of PEF's rights, including those to the escrowed moneys, related back to the date of certification and continued from that date forward. This result necessarily follows from the inability of a court, including the Court of Appeals, to certify an employee organization as a bargaining unit. Only PERB has such authority (Civil Service Law, § 207, subd 3). A court can only review PERB's determination in an article 78 proceeding. Thus, the Court of Appeals confirmed PEF's certification as of September 27, 1978; it did not judicially confer that status as of the date of its decision.

Since we feel that PEF is entitled, by mandate of the statute (Civil Service Law, § 208, subd 1, par [b]; subd 3, par [a]), to both the membership dues and agency fees escrowed during the period marked by the date of Special Term's stay order and the date of the Court of Appeals modification of our reversal of PERB, we cannot indulge equitable considerations. Moreover, the president of CSEA, in an affidavit in support of the motion to escrow the funds, stated that "CSEA will continue to represent the 45,000 employees in the PS & T unit *without financial remuneration until a final determination of this appeal has been made"* (emphasis supplied). In the decision being appealed, Special Term observed that "[a]bsent such an arrangement the court most certainly would have conditioned the stay upon the posting of security by CSEA for the benefit of PEF should it ultimately prevail, as it has done." In any event, the motivation of CSEA in volunteering to continue to act without remuneration is irrelevant when juxtaposed to the clear mandate of the statute.

■ Turning to that branch of the order appealed from which denied intervention by certain members of the PS & T unit, we conclude that Special Term did not abuse its discretion in so ruling. The proposed intervenors, in the context of an article 78 proceeding, are not entitled to intervene as of right pursuant to CPLR 1012 *(Matter of Doe v County of Westchester,* 45 AD2d 308, 312), but are subject to the provisions of CPLR 7802 (subd [d]) which provides that the court "may allow other interested persons to intervene". The proposed intervenors lack the requisite "interest" both as individual petitioners and as representatives of a class.

■ ■ Here, the statutorily required "interest" in the proceeding (CPLR 7802) must be found in the proposed intervenors' entitlement to the escrowed funds. We conclude that they have none. Their contention that PEF was not certified during the stay period and, accordingly, not entitled to the subject moneys is untenable. Equally amorphous is their position that CSEA lost all claim to the escrowed funds because it failed to negotiate collectively during the same period. Entitlement to dues (Civil Service Law, § 208, subd 1, par [b]) and agency fees (Civil Service Law, § 208, subd 3, par [a]) is dependent on certification, not on any theory of "services rendered". Similarly, the proposed intervenors failed to establish the necessary prerequisite for a class action, i.e., that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (CPLR 901, subd a, par 5). Clearly, if Special Term had determined that neither CSEA nor PEF was entitled to the funds, the interest of the PS & T unit would have been protected under the principles of *stare decisis (Matter of Jones v Berman,* 37 NY2d 42, 57; *Matter of Rivera v Trimarco,* 36 NY2d 747). Thus, since the proposed intervenors are not entitled to the escrowed funds and lack the prerequisites necessary for the maintenance of a class action, they are not movants whose rights need to be protected (see *Matter of New York City Health & Hosps. Corp. v City of New York,* 85 Misc 2d 501, affd 56 AD2d 535).

■ Finally, we cannot accept the view of the dissent that intervention of certain employees of the PS & T unit is necessary in order to permit inquiry upon remittal as to when a dues structure was adopted by PEF. The right to fashion such a schedule is a derivative of the express grant of the applicable statute (Civil Service Law, § 208, subd 1, par [b])

and the stay contained in Special Term's order of September 29, 1978, continued by us by orders dated October 12, 1978 and January 11, 1979, specifically stated "[t]hat the Public Employees Federation * * * [is] hereby *stayed from the exercise of any rights accompanying certification as enumerated under Sections 204 and 208 of the Civil Service Law*" (emphasis supplied). It necessarily follows that the "right" to develop a dues schedule for the employees of the PS & T unit was stayed until final resolution of the underlying issue. Indeed, this court, by its order of April 16, 1979, in response to PEF's motion to release the escrowed funds to it following the final determination by the Court of Appeals, CSEA's cross motion for like relief and the motion for intervention by certain employees of the PS & T unit, by way of partial relief, ordered "[t]hat the prior orders of this court are modified so as to provide that all monies collected on or after March 27, 1979 * * * now held in an escrow account by the Comptroller * * * be released to the Public Employees Federation, together with all accrued interest thereon." There was no valid impediment premised on the absence of a dues schedule by PEF at that time, and, in our view, none exists now.

The order should be affirmed, without costs.

KANE, J. (concurring in part and dissenting in part). In my opinion the present record does not adequately establish PEF's entitlement to the immediate release of all funds in the Comptroller's possession as a result of the stay issued by Special Term on September 28, 1978. Although the majority correctly decides that CSEA has no valid claim thereto, and that most of the issues raised by the proposed intervenors are without merit, intervention by these individual PS & T unit members should be granted, for they have a legitimate interest in the disposition of the disputed fund which cannot be settled without additional information.

The stay involved in this proceeding temporarily suspended implementation of PERB's order certifying PEF and ousting CSEA as the bargaining representative of the PS & T unit. Now that the judicial review process has upheld PERB's determination, dissolution of the stay should be accomplished in a manner that will leave PEF in the position it would have occupied had there been no litigation. The difficulty with this approach is that PEF is a relatively new labor organization (see *Matter of Civil Serv. Employees Assn. v Newman,* 66 AD2d 38, 47, mod 47 NY2d 1005), and the stay did not direct

the Comptroller to escrow any set rate of deductions. Although not disclosed by the record, I assume that the Comptroller simply continued to withhold from PS & T unit salaries the same amount of money he previously collected from each on behalf of CSEA. In any event, these two complications are sufficient to demand that a further inquiry be conducted before the entire fund is turned over to PEF.

Contrary to the unsupported assertion of the majority, the *right* to fashion a dues schedule is not derived from or dependent on section 208 of the Civil Service Law. While the statute commands that dues and matching agency shop fee deductions be made for the benefit of a certified bargaining representative, it does not purport to set or limit the amount thereof in any respect. The authority to formulate a dues policy is an attribute of PEF's organizational existence wholly apart from these provisions. So long as it complied with the laws governing its internal operations, PEF was and remained completely free to fix and levy whatever charge for dues it might happen to select. The stay momentarily prevented PEF from exercising the substantial *additional* right to have its dues structure enforced by the Comptroller through mandatory payroll deductions, but its terms did not expressly or implicitly restrain PEF from setting the amount of such dues.

Moreover, it seems plain to me that the provisions of section 208 of the Civil Service Law are not self-executing. Once an employee organization gains certification, it must somehow inform the Comptroller of the amount it charges for dues before the deduction process can be effected. The naked certification cannot be translated into a specific dollar amount without this information, nor can a qualified employee organization insist that the Comptroller perform his statutory obligation until this sum has been communicated to him. If PEF had no dues policy in place on September 27, 1978, it would have no right to demand that any salary deductions be made. Similarly, if its periodic dues were fixed at some later date or in an amount less than the Comptroller actually collected under the stay, I fail to perceive any legal or logical basis on which PEF could lay claim to the whole fund. In either situation, any excess collections should be returned to the individual PS & T unit members. While the proposed intervenors raised no objection to the deductions made after March 27, 1979, they certainly did not surrender any rights which they might have possessed before that date. Class

action status is unnecessary, but intervention should be allowed to determine if these rights have been adequately protected. Accordingly I dissent in part and would modify the instant order to the extent of allowing intervention and directing a remittal to Special Term for the purpose of ascertaining the amount of PEF's dues and the date on which it validly adopted such a policy.

HERLIHY, J. (concurring in part and dissenting in part). I concur in that part of the order appealed from that grants PEF the membership dues for the reasons and upon the findings set forth in the opinion of Mr. Justice CHOLAKIS at Special Term. I dissent, however, as to the agency shop fees and would grant the motion of the intervenors as to this aspect of the case. The prior decision of the Court of Appeals, the decisions of this court and Special Term did not consider the merits of the intervenors' arguments and contentions.

There appears to be no precedent for the present proceeding and it becomes more or less a judgment call. Under these circumstances, it appears to me that there is a valid distinction between the rights of dues-paying members under the terms of a contract and the rights of those nonmembers required to pay fees pursuant to a statute which should be construed most favorably in favor of the intervenors. Such a result will do equity to all of the parties involved.

With that preamble as to agency shop fee deductions pursuant to section 208 (subd 3, par [a]) of the Civil Service Law, the rights of the proposed intervenors to relief are not so easily dismissed. Paragraph (a) of subdivision 3 provides, in part, as follows: "[E]very employee organization *that has been recognized or certified* as the exclusive representative of employees of the state within a negotiating unit of classified civil service employees or employees in a collective negotiating unit established pursuant to this article for the professional services in the state university, for the members of the state police or for the members of the capitol buildings police force of the office of general services *shall be entitled* to have deducted from the wage or salary of the employees in such negotiating unit who are not members of said employee organization, *the amount equivalent to the dues levied by such employee organization,* and the state comptroller shall make such deductions and transmit the sum so deducted to such employee organization. Provided, however, that the foregoing provisions of this subdivision *shall only be applicable* in the

case of an employee organization which has established and maintained a procedure providing for the refund to any employee demanding the return any part of an agency shop fee deduction which represents the employee's pro rata share of expenditures by the organization in aid of activities or causes of a political or ideological nature only incidentally related to terms and conditions of employment. Nothing herein shall be deemed to require an employee to become a member of such employee organization." (Emphasis added.) Additionally, the following definition is set forth in section 201 (subd 2, par [b]) of the Civil Service Law as follows: "(b) The term 'agency shop fee deduction' means the obligation *or practice* of a government to deduct from the salary of a public employee who is not a member of the certified or recognized employee organization which represents such employee for the purpose of collective negotiations conducted pursuant to this article, *an amount equivalent to the amount of dues payable by a member.* Such term also means the obligation *or practice* of government to transmit the sums so deducted to an employee organization." (Emphasis added.) As set forth in the above statutory provisions, it is apparent that the agency shop fee deduction is not a simple withholding of salary but is, in fact, an amount never controlled by the employee. Unlike closed shop arrangements where a person must join a union in order to work, the agency shop does not require membership in a union. Recognizing that there can be other views presented as to agency shop fee, the fact remains that any employee who is not a member of the union currently recognized or certified as the representative of his unit is subjected to a salary deduction without his consent. An employee may question whether or not any withholding not personally directed by consent is done in accordance with law.

Based upon the foregoing statutory language and the present record as is more fully considered hereinafter, it seems evident that the proposed intervenors have established a legal interest in the funds in escrow which represent their agency shop fee deductions for the period at issue. Accordingly, as noted above, the motion to intervene must be granted as to Cohen, Murphy and Suss. However, I concur with Special Term as to denying any class action status to these proceedings. The principles of *stare decisis* are sufficient protection for the similarly situated State employees. *(Matter of Jones v Berman,* 37 NY2d 42, 57.)

Essentially, PEF has relied upon its contention that merely being certified entitled it to the amount withheld as agency shop fees because CSEA was not entitled to such fees, as it was not certified. However, as even a cursory view of the language hereinabove quoted (Civil Service Law, § 201, subd 2, par [b]; § 208, subd 3, par [a]) reveals, certification (recognition) is only essential as *an initial condition* for the withholding of *any* sums of money not authorized by the employee. As a result of the Court of Appeals decision on March 27, 1979, it is apparent that CSEA was not a union for which such deductions could be made because it was not certified. On the other hand, PEF was certified throughout the period at issue, and, therefore, the State was obligated to withhold an agency shop fee and pay it over to PEF in accordance with the statute.

However, PEF has not presented any of the legal requirements to establish a complete right to an agency shop fee deduction in *any* particular amount. There is nothing to indicate that the agency shop fees were only withheld for employees *not* members of PEF or that such fees are the equivalent of the *dues* charged members of PEF. In another aspect of this case under examination in the prior decision of this court on the merits of the underlying litigation *(Matter of Civil Serv. Employees Assn. v Newman,* 66 AD2d 38, 47, *supra),* its organization was described thusly: "[I]t has no membership, no employees, no bank accounts, no officers, nor any indicia of an organization."

Accordingly, neither CSEA nor PEF has demonstrated any legal basis to receive the escrow moneys which represent agency shop fee deductions. It appears that those sums of money were withheld at the direction of the stay orders of this court and Special Term and should now be refunded by the Comptroller to the employees from whom withheld.

It must be recognized that, upon the prior proceedings culminating in the order of April 16, 1979 by this court, the proposed intervenors did not raise any issue as to proceeds collected on and after March 27, 1979 and no factual or legal issue was raised as to the entitlement of PEF to the agency shop fees on and after that date. We now have before us the entire record including the rights of the proposed intervenors.

The order should be modified by granting the motion of proposed intervenors Cohen, Murphy and Suss as to agency shop fees in escrow and affirming its denial in all other respects including a denial of class action status, and, by

directing the Comptroller, as holder of the balance of the escrow funds pursuant to orders of this court and Special Term, to pay over the funds representing agency shop fees by the method of refunds to the employees from whom withheld or their legal representatives, and, as so modified, the order should be affirmed.

SWEENEY and STALEY, JR., JJ., concur with MAHONEY, P. J.; KANE and HERLIHY, JJ., concur in part and dissent in part in separate opinions.

Order affirmed, without costs.