BUFFALO FORGE COMPANY, Appellant, v ROBERT ABRAMS, as Attorney-General of the State of New York, et al., Respondents.

First Department, February 20, 1981

### APPEARANCES OF COUNSEL

*Douglas M. Kraus* of counsel *(Skadden, Arps, Slate, Meagher & Flom,* attorneys), for appellant.

*Jay Topkis* of counsel *(Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Ampco-Pittsburgh Corporation and others, respondents.

*Eugene D. Berman* of counsel *(Shirley Adelson Siegel* and *Linda A. Martinson* with him on the brief; *Robert Abrams,* attorney), for Attorney-General, respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Ampco-Pittsburgh Corporation and Ampco-Pittsburgh Securities II Corporation, its wholly owned subsidiary, filed

a registration statement pursuant to New York's Security Takeover Disclosure Act (Business Corporation Law, § 1600 *et seq.*) with the Attorney-General on January 7, 1981 in connection with their takeover bid for the equity securities of Buffalo Forge Company, a New York corporation in existence for over 100 years, with principal offices located in Buffalo, New York.

Ampco is a Pennsylvania corporation, incorporated in 1929, while Ampco II was incorporated in Delaware in 1980 for the purpose of acquiring and holding securities. According to the registration statement, the Louis Berkman Company (LBC), incorporated in Ohio in 1931, together with Louis Berkman, chairman of the executive committee of Ampco, Marshall L. Berkman, chairman of the board and chief executive officer of Ampco, and Robert A. Paul (Louis Berkman's son-in-law), president and chief operating officer of Ampco, control Ampco and Ampco II. LBC and Louis Berkman together own 40% of the common stock of Ampco, the parent of Ampco II, which is, technically, the maker of the tender offer. As is conceded by Ampco, LBC and Louis Berkman are, in essence, one and the same.

Petitioner Buffalo Forge instituted a CPLR article 78 proceeding to challenge the validity of the Attorney-General's waiver of the filing of financial statements by Louis Berkman and LBC, despite a finding by the Attorney-General, with which we agree, that each qualified as an "offeror" within the definition of that term in the disclosure act. (Business Corporation Law, § 1601, subd [c].) * A preliminary injunction was sought to restrain the respondents (other than the Attorney-General) from purchasing shares of petitioner's stock tendered pursuant to their pending cash tender offer and to enjoin the Attorney-General from granting any exemption from the requirements of the statute.

---

* " 'Offeror' means a person who makes, or in any way participates or aids in making, a takeover bid, and includes persons acting jointly or in concert, or who intend to exercise jointly or in concert any voting rights attached to the securities for which such takeover bid is made. An 'offeror' does not include any bank, broker-dealer, attorney, accountant or consultant furnishing information or advice to an offeror and not otherwise participating in the takeover bid."

The Attorney-General justifies the waiver as an appropriate exercise of his authority under section 12.5 of the disclosure regulations (13 NYCRR 12.5), which he has promulgated pursuant to subdivision (a) of section 1608 of the Business Corporation Law. Under subdivision (a) of section 1608, however, the Attorney-General is authorized only to promulgate "rules and regulations necessary to carry out the purposes of this article." Section 1602 of the act provides that "[n]o offeror shall make a takeover bid unless * * * he files with the attorney general * * * a registration statement containing the information required by section [1603] of this article." Within the eight subdivisions of section 1603 is one which requires, *inter alia*, the financial statement of an offeror for the current period and for the three most recent annual accounting periods.

We do not construe section 12.5 of the regulations as authorizing a waiver of the section 1603 registration statement requirements. Section 12.5 specifies the content which the Attorney-General deems essential in a financial statement. The authority which he has conferred upon himself in that same section to waive "[t]hese requirements, or any part thereof" must obviously be limited to the waiver of compliance with his own regulations. Although it has conferred authority upon the Attorney-General to promulgate rules and regulations to carry out the purposes of the act, the Legislature has not authorized him to waive the financial statement itself. The Legislature was quite specific in those instances where it intended to confer authority on the Attorney-General to waive any of the disclosure act's provisions. (See, e.g., Business Corporation Law, § 1614.)

We conclude, therefore, that the Attorney-General's interpretation of section 12.5 of the regulations as authorizing a waiver of an offeror's filing requirements under subdivision 7 of section 1603 of the Business Corporation Law was unreasonable and without a rational basis. (See *Ostrer v Schenck*, 41 NY2d 782, 786.) "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute". *(Matter of Jones v Berman*, 37 NY2d 42, 53.) Under the disclosure act the

Attorney-General, albeit an elected official, is charged solely with its administration. (Business Corporation Law, § 1608, subd [a].)

The requirements of this State's disclosure act are in addition to Federal filing regulations, and serve other public purposes:

"The purpose of this bill is to require persons or corporations making tender offers for the take-over of New York State corporations to make certain disclosures concerning the identity of the offerors, the source of funds to be used, the plans of the offeror in regard to liquidation or selling of the assets of the acquired corporation, and other information on the organization and operations of the offeror.

"Recently, there have been a number of instances where out-of-state corporations have made tender offers for the securities of New York State corporations. After the takeover has been accomplished, the parent corporation may initiate the liquidation of the acquired corporation or move its operations away from New York State * * * In many cases, stockholders of the acquired corporation have not been given sufficient information on the background or intentions of the offering corporation and might well make a different response to the tender offer had there been a full disclosure of that information." (NY Legis Ann, 1976, p 108, Tender offers, disclosure.)

If the Legislature did not believe that an offeror's financial statement was material to the takeover, it would not have mandated a filing. In waiving a statutorily mandated filing requirement the Attorney-General has frustrated the clear intent of the disclosure act. Injunctive relief is, therefore, appropriate to compel compliance with the statute.

Accordingly, the order, Supreme Court, New York County (A. KLEIN, J.), entered February 5, 1981, which, *inter alia*, denied petitioner's application for a temporary injunction, should be reversed, on the law, without costs and disbursements, and the injunction granted to the extent of enjoining and directing the Attorney-General to require the Louis Berkman Company and Louis Berkman to make the statutory disclosures required of an offeror pursuant to section 1603 of the Business Corporation Law

before allowing Ampco-Pittsburgh Corporation and Ampco-Pittsburgh Securities II Corporation to purchase and pay for any shares tendered in response to said corporations' takeover bid for equity securities of Buffalo Forge Company.

MARKEWICH, J. (dissenting). I dissent and would affirm on the opinion of Mr. Justice ALVIN KLEIN at Special Term.

KUPFERMAN, J. P., and BIRNS, J., concur with SULLIVAN, J.; MARKEWICH, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on February 5, 1981, reversed, on the law, without costs and without disbursements, and the injunction granted to the extent of enjoining and directing the Attorney-General to require the Louis Berkman Company and Louis Berkman to make the statutory disclosures required of an offeror pursuant to section 1603 of the Business Corporation Law before allowing Ampco-Pittsburgh Corporation and Ampco-Pittsburgh Securities II Corporation to purchase and pay for any shares tendered in response to said corporations' takeover bid for equity securities of Buffalo Forge Company.