OPINION OF THE COURT
Robert F. Doran, J.
The plaintiff is one of the approximately 10,000 employees of the State of New York designated as a managerial/confidential employee pursuant to article 14 of the Civil Service Law. He is also one of the 2,500 members of the Organization of Management/Confidential Employees, Inc. In this declaratory judgment action, the plaintiff has moved for summary judgment directing that the defendants process his payroll deduction form for certain insurance programs being offered to members of the Organization of Management/Confidential Employees, Inc. and for an order allowing this action to proceed on a class action basis. Defendants seek a dismissal of the complaint.
Some background information is necessary at this point. On July 13, 1979, the Governor vetoed Senate Bill 4207, *459 which would have amended the State Finance Law to authorize the State Comptroller, upon written approval of the Director of Employee Relations, to make payroll deductions from the salary of managerial/confidential State employees for payment of insurance premiums on policies issued or sponsored by any duly authorized association or organization of managerial/confidential civil service employees with at least 500 members. The Governor, in his veto message, called attention to the fact that he had recently directed the Office of Employee Relations to establish a Division of Managerial/Confidential Affairs to focus greater attention on the benefits made available to managerial/confidential employees. The veto message indicated that the bill was a piecemeal approach to an issue that demanded a comprehensive and even-handed response. He was concerned that the bill’s requirement that any organization or association have 500 members in order to qualify might have the unintended effect of inviting a proliferation of organizations formed not for the benefit of employees but, rather, for the benefits that might accrue to the organizations themselves acting as the insurance broker.
In 1980, as part of the Governor’s program, chapter 474 of the Laws of 1980 was enacted into law. Section 6 of that law added section 159 to the Civil Service Law. Section 159 reads as follows:
“1. The president, subject to the approval of the director of employee relations and the director of the budget, is hereby empowered to establish regulations relating to, and to enter into and administer contracts providing for group insurance policies or programs for state employees in the executive branch precluded from collective bargaining by subdivision five or subdivision seven of section two hundred one of this chapter [the Civil Service Law].
“2. Any such policy or program shall be subject to the following provisions:
“a. The benefits provided thereby shall be available to all state officers and employees in the executive branch whose positions are designated managerial or confidential pursuant to article fourteen of this chapter [the Civil Service *460 Law] and all state officers and employees excluded from representation rights under this chapter [the Civil Service Law] pursuant to rules and regulations of the public employment relations board;
“b. The benefits provided thereby may be made available to state officers and employees in the division of military and naval affairs in the executive department; and
“c. Unless any group insurance policy or program offered pursuant to this section is funded by payroll deductions in accordance with subdivision three of section six-a of the state finance law, such policy or program shall be funded by specific appropriation of monies of the state, provided, however, both payroll deductions and state appropriations may be utilized to fund any such policy or program.
“3. Notwithstanding the provisions of any general or special law, no state monies shall be available for group insurance policies or programs established by the president until a certificate of allocation and a schedule of amounts to be available therefor shall have been issued by the director of the budget, and a copy of such certificate filed with the comptroller, the chairman of the assembly ways and means committee and the chairman of the senate finance committee.
“4. Monies appropriated and allocated for the purposes set forth herein, shall be paid out on the audit and warrant of the comptroller on vouchers certified or approved by the president.”
Section 12 of chapter 474 amended the State Finance Law by adding to section 5-a a new subdivision 3, which reads as follows: “3. The comptroller is hereby authorized to deduct from the salary of any employee of the state in the executive branch whose position is designated managerial or confidential pursuant to article fourteen of the civil service law, employees covered by section nineteen of the correction law, employees in the professional service in the state university which are designated, stipulated or excluded from negotiating units as managerial or confidential as defined pursuant to article fourteen of the civil service law, employees covered by paragraph (a) of subdivision one of section two hundred fifteen of the execu *461 tive law or in the division of military and naval affairs of the executive department or excluded from representation rights under article fourteen of the civil service law pursuant to rules or regulations of the public employment relations board such amount as such employee may specify in writing filed with the comptroller for the payment of insurance premiums for a group insurance plan, or a wholesale, franchise or similar mass-marketed insurance policy or program and transmit deductions so withheld to the insurance or other company, organization, or agency issuing or administering said policy. Any such written authorization may be withdrawn by the employee at any time upon filing written notice of such withdrawal with the comptroller, or such deduction may be terminated on notice to the comptroller by the insurance or other company or organization in accordance with the terms of the policy.”
It is the plaintiff’s position that nowhere in subdivision 3 of section 6-a of the State Finance Law is there any stated limitation on who may develop or administer insurance plans for which payroll deductions are authorized. By letter dated February 17,1981, an attorney for the Organization of Management/Confidential Employees, Inc. submitted to the defendant Comptroller a payroll deduction authorization form. The authorization form was tendered for use by managerial/confidential employees who wished to utilize payroll deductions authorized by subdivision 3 of section 6-a of the State Finance Law to purchase insurance pursuant to an arrangement established by the Organization of Management/Confidential Employees, Inc. with an Albany, New York, area insurance agency.
The defendant Comptroller declined to approve the authorization form on the basis that the Office of Employee Relations recommended disapproval of it in the belief that subdivision 3 of section 6-a of the State Finance Law authorized payroll deductions only for those insurance programs established and implemented by the State of New York Office of Employee Relations itself.
The plaintiff argues that an examination of the statutes leaves no room for the inference submitted by the defendants that payroll deductions are limited to insurance programs established by the defendants.
*462 The plaintiff claims that subdivision 3 of section 6-a of the State Finance Law and section 159 of the Civil Service Law are clear and straightforward and that neither section makes any reference to limiting its provisions to only those insurance programs established through the Director of the Office of Employee Relations.
The plaintiff also seeks an order allowing the maintenance of this action as a class action pursuant to CPLR article 9. On this issue, the court concludes that this is not a proper situation for class action certification.
Class action certification is a matter vested in the sound discretion of the court (Matter of Froehlich v Toia, 71 AD2d 824), and while class action status should not be denied solely because governmental operations are involved, it may be only sparingly authorized in such circumstances (Matter of Knapp v Michaux, 55 AD2d 1025, 1026).
Moreover, it is now settled law that in most cases involving governmental operations, class action relief is not necessary, since subsequent plaintiffs will be adequately protected under the principle of stare decisis (Matter of Jones v Berman, 37 NY2d 42, 57).
In addition, it cannot be said that the plaintiff’s claim in this declaratory judgment action is necessarily typical of every other member of the 10,000-member class (CPLR 901, subd 3). It may very well be that many other members of the class would wish to have the law in question interpreted as allowing only the Director of Employee Relations to establish and negotiate plans for which payroll deductions can be made. It goes without saying that the power to negotiate a more advantageous plan lies with one large group with a potential of 10,000 customers than with several small, individual groups of management/confidential employees all negotiating on their own.
On the main issue, the court concludes that the defendants are entitled to summary judgment dismissing the complaint, without costs or disbursements. It is the court’s opinion that subdivision 3 of section 6-a of the State Finance Law must be read in conjunction with section 159 of the Civil Service Law, since both were enacted as part of the same comprehensive package and in one chapter of the *463 Laws of 1980. Read together, in light of all the legislative history, including the sponsor’s memorandum, and other items found in the bill jacket and the 1979 veto of Senate Bill 4207, it is clear that the authority granted to the Comptroller to make payroll deductions is limited to instances involving State-sponsored insurance plans. Section 97 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1) states that it is a fundamental rule of statutory construction that a statute or legislative act is to be construed as a whole and that all parts of an act are to be read together to determine legislative intent. Thus, in construing a statute, the court must take the entire act into consideration, and all sections of the law must be read together to determine its fair meaning.
Section 130 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1) further states that all parts of a statute are to be considered together, and as a general proposition, it is immaterial in such construction that the statute is divided into sections, chapters or titles. All sections of the law must be read together to determine its fair meaning, and the various parts of the same act, albeit contained in different sections, are to be construed as if they all were in the same section.
Here, subdivision 3 of section 6-a of the State Finance Law and section 159 of the Civil Service Law are in different sections of chapter 474 of the Laws of 1980, but it is obvious from the cases involving statutory construction that they must be read together.
The court cannot agree with the plaintiff’s stance in page 3 of his brief that both subdivision 3 of section 6-a of the State Finance Law and section 159 of the Civil Service Law are clear and straightforward and that neither section makes any reference to limiting its provisions to only those insurance programs established through the Director of Employee Relations. Subdivision 1 of section 159 of the Civil Service Law makes it patently clear that the President of the Civil Service Commission is empowered to enter into and administer contracts providing for group insurance policies or programs for State managerial/confidential employees but only with the approval of the Director of Employee Relations.