OPINION OF THE COURT
Debra A. James, J.
In this proceeding, petitioner, a rent-stabilized tenant, seeks *512 to annul and vacate the January 11, 2002 denial by respondent New York State Division of Housing and Community Renewal (DHCR) of her petition for administrative review (PAR) of a rent overcharge claim she filed in 1999.
By that denial, DHCR affirmed the Rent Administrator’s determination that no rent overcharge had occurred as the landlord, respondent 557 West 148th Street Realty, L.L.C. (respondent), had altered the “footprint” of the apartment to the extent that petitioner’s original apartment was no longer in existence but assumed a new state on the base date, i.e., the date the tenant was restored to occupancy. It affirmed the Rent Administrator’s conclusion that on that basis there was no rent overcharge as the landlord was entitled to charge petitioner a free market or “first rent.”
DHCR modified the Rent Administrator’s order only to the extent that it held that $750 was the initial instead of a preferential rent.
Finding of Facts
A building-wide fire forced petitioner, a 20-year rent-stabilized tenant of her apartment, to vacate that apartment in July 1997. Prior to the fire, the lawfully registered rent, i.e., the amount reserved for rental of the apartment under the rent-stabilized lease between petitioner and respondent’s predecessor, was $432.31 per month.
By order determining maximum rent/legal regulated rent dated December 16, 1997 (rent order), DHCR established that petitioner’s legal, regulated rent was $1 per month as of the date of the fire. The rent order entitled petitioner, upon payment of $1 per month, to be restored to occupancy of the apartment.
Petitioner remitted the $1 a month to respondent 557 West 148th Street Realty, L.L.C. Respondent carried out extensive renovations of the building and installed eight apartments per floor as compared to six apartments per floor before the fire. Without prior notice to petitioner, respondent restored the apartment by making alterations that modified the outer perimeter walls of the apartment, and specifically decreased the size of petitioner’s apartment from approximately 1,000 square feet to 500 square feet, reduced the number of bedrooms from four to two, replaced a full, separate kitchen with a kitchenette and smaller living room and provided two fewer windows.
*513 In July 1999, 22 months after the fire, respondent and petitioner entered into a new rent-stabilized lease for the altered apartment, under which the rent was $750 per month.
Petitioner remitted the amount of rent reserved under her prefire lease to respondent and filed an overcharge complaint with DHCR. By order of May 10, 2001, the DHCR Administrator denied the complaint, holding that all rent adjustments subsequent to the base date* were lawful. In denying petitioner’s PAR, DHCR determined that:
“the evidence of record including architectural diagrams and a Certificate of Occupancy discloses that the subject premises was completely renovated after the fire with two apartments being added to each floor. The record further reflects that the subject apartment was reconfigured and reduced in size and was no longer the same apartment as existed on the base rent date prior to the fire. Accordingly, the owner was entitled to collect a ‘first rent’ when the tenant herein moved back to the subject premises after the renovation work was completed. However, the Rent Administrator should have held that the $750.00 initially charged the tenant is the first rent and not have held that such amount was a preferential rent. The Rent Administrator’s order is hereby modified to so list the $750.00 initial rent. Since the owner was entitled to charge a first rent after the renovation and change in the size of the subject apartment independent of any apartment improvement, the issue of rent increase based on apartment improvements is moot. Therefore, the tenant has not been overcharged and the tenant’s petition must be denied.”
Conclusions of Law
The Rent Stabilization Law of 1969 and Emergency Tenant Protection Act of 1974 are remedial statutes enacted to encourage future housing construction by allowing owners reasonable rent increases; to prevent the exaction of unjust, unreasonable and oppressive rents; and to forestall profiteering, speculation and other disruptive practices in the housing market. (Matter of 300 W. 49th St. Assoc. v New York State Div. of Hous. & *514 Community Renewal, 212 AD2d 250, 254 [1st Dept 1995].) The Division of Housing and Community Renewal has the authority to promulgate rules and policies in the furtherance of such objectives. (Matter of Jones v Berman, 37 NY2d 42, 56 [1975].)
This proceeding poses a question of first impression under those policies. What are the rights of a rent-stabilized tenant who involuntarily vacates an apartment severely damaged by fire but maintains “constructive” occupancy under a DHCR rent reduction order?
There is no dispute that under its December 1997 order, by restoring petitioner to occupancy of the “subject apartment” upon her payment of $1 nominal rent per month, DHCR preserved petitioner’s rent-stabilized tenancy rights in her apartment. The intensely contested question is the extent of such rights. Petitioner asserts a preservation of all her rights under the rent stabilization laws, including the right to a base rent set at the rate under her lease before the fire. Respondent counters that because the building rehabilitation resulted in the elimination of plaintiffs apartment, her rent stabilization rights are limited to in essence a “right of first refusal” to a newly reconfigured apartment whose base rent would be set at “first rent” or market rent. DHCR concurs with respondent’s argument.
Neither Rent Stabilization Code (9 NYCRR) § 2522.4 (a) (1) nor § 2502.4 (a) (2) (ii), which refer, respectively, to work that is in the nature of an individual apartment improvement (IAI) or major capital improvement (MCI), are applicable here. Neither provision allows an owner to set a new base rent at market level. Instead, each permits monthly rent increases for an individual apartment or for an entire building where there is a substantial increase of dwelling space or services, or other improvements. The owner may recoup his investment by increasing the monthly rent by l/40th of the total costs of improvement attributable to the particular apartment. Neither statute pertains to the facts here as respondent does not claim any increase in dwelling space or services. Nor does respondent contend that it obtained written consent from petitioner or gave prior notice to her, which are required for IAI or MCI increases under the rent stabilization laws.
Rather, the parties’ dispute turns on the interpretation of DHCR Operation Bulletin 95-2. That bulletin implements the policy for IAI and MCI, sets forth the policy regarding a finding by DHCR that a building has been substantially rehabilitated such that it would be exempt from the rent stabilization *515 laws, and finally, the matter at issue here, establishes an administrative policy for the imposition of “first rent.” It reads, in pertinent part:
“IV. ‘Constructive Occupancy’ by Rent Stabilized Tenants in Substantially Rehabilitated Buildings
“In certain cases, because of the existence of hazardous conditions in their rent stabilized housing accommodations, e.g., fire damage, some rent stabilized tenants may be ordered by a governmental agency to vacate the housing accommodation. Such vacate order may create a ‘constructive occupancy,’ providing for payment by the tenant of a nominal rental amount such as $1.00 per month, while the vacate order is in effect, and permitting the tenant to resume occupancy without interruption of his or her rent stabilized status, upon restoration of the housing accommodation to a habitable condition. Where the building has been substantially rehabilitated, constructive occupancy will have the effect of excepting the housing accommodation from the exemption from rent regulation based upon such rehabilitation.
“However, the exemption from rent regulation based upon substantial rehabilitation will apply to all housing accommodations in a building which are not ‘constructively occupied’ or actually occupied by a previously rent regulated tenant. In addition, the exemption will also apply to a constructively occupied housing accommodation if the returning tenant subsequently vacates, or if the tenant who is entitled to return pursuant to court or DHCR order chooses not to do so.
“V. Individual Apartment Improvements, Major Capital Improvements, and First Rents Distinguished from Substantial Rehabilitation
“First Rents: WThere an owner significantly changes the perimeter and dimensions of an existing housing accommodation, * * * the DHCR may find that the resultant housing accommodation was not in existence on the applicable base date. Such a finding may entitle the owner to charge a market ‘first rent,’ subject to guidelines limitations for future adjustments.”
Thus, the operational bulletin, in interpreting the statutory provisions, establishes the rights of a rent-stabilized tenant who “constructively occupies” an apartment in a building that *516 is substantially rehabilitated within the meaning of the provisions that would otherwise exempt that building from coverage under the rent stabilization laws. Under that policy, assuming no change to the perimeter walls, such a rent-stabilized tenant’s rent would be calculated based upon the rent history for that apartment, and not “first rent.” A tenant whose occupancy postdates the substantial rehabilitation of the building would have no claim to any of the protections of the rent stabilization laws.
In addition, the bulletin provides for the instance where the owner does not substantially rehabilitate the building to exempt it from the rent stabilization laws but significantly changes the perimeter of an existing housing accommodation so as to be permitted to charge “first rent” for that accommodation.
What the operational bulletin does not make clear is the rights of a rent-stabilized tenant who constructively occupies an apartment that is restored in the course of the substantial rehabilitation of the entire building, and whose perimeters or dimensions are significantly changed in that rehabilitation.
Clearly, under the bulletin, petitioner had the right to a rent-stabilized apartment, whether or not the building became exempt from rent stabilization laws as a result of substantial rehabilitation. What the bulletin fails to explicitly answer is what base rent may be charged upon petitioner’s physical restoration to possession.
The Appellate Division in 300 W. 49th St. Assoc. (212 AD2d at 253-254) described the “first rent” policy as follows:
“The policy applies only when the perimeter walls of the apartment have been substantially moved and changed and where the previous apartment, essentially, ceases to exist, thereby rendering its rental history meaningless. If the rental history of a stabilized apartment is no longer applicable due to the creation of a new unit with completely different perimeter walls, there would be no rational method which DHCR could utilize to calculate the legal rent since the stabilized rent is based upon a continuous chain of rental history. By way of example, such allowance might be granted if a two-bedroom apartment were split into two studio apartments or two smaller dwellings were consolidated to form one large apartment. In either circumstance, the rental history of the prior units *517 would be inapplicable to the newly created apartment for the purposes of determining the stabilized rent as the former unit or units no longer remain.”
The Court stated that the “first rent” mechanism set forth in the bulletin is an administratively created policy implemented by DHCR on a matter on which the statute is silent. (Id. at 255.) It determined that the “first rent” policy is a rational and reasonable interpretation of the rent stabilization statutes by DHCR. (Id. at 256.) The Appellate Division noted “that the DHCR’s policy of allowing a first market rent has been implemented by both the Conciliation and Appeals Board and the DHCR on numerous occasions, over many years, and has recently been cited with approval by this Court.” (Id. at 255 [citations omitted].)
While this court is bound by and adheres to that holding, the 300 W. 49th St. Court was not faced with the critical question at bar, to wit, the application of the “first rent” policy to a tenant in “constructive occupancy.”
In 300 W. 49th St. Assoc., significantly, the alterations performed by the owner took place prior to the occupancy of the rent-stabilized apartment by the tenants claiming the overcharge. Those tenants commenced occupancy under a vacancy lease that would have entitled the owner to “first rent” had the alterations, performed prior to that lease, resulted in a significant change to the apartment perimeter. In applying the policy to those tenants, the Court upheld DHCR’s denial of “first rent” finding that the owner had not changed the perimeter of the apartment in question.
No vacancy lease is at issue here. In fact, none of the decisions of the Conciliation and Appeals Board (DHCR’s predecessor agency) or coordinate courts cited in 300 W. 49th St. Assoc. involve a tenant involuntarily forced to vacate an apartment through no fault of their own, where the tenant obtains a DHCR rent reduction order that places the tenant in “constructive occupancy” of the apartment prior to the owner’s movement of its boundary walls.
Tellingly, DHCR used precatory language in its operational bulletin when referring to “first rent.” It stated that where “an owner significantly changes the perimeter and dimensions of an existing housing accommodation, * * * DHCR may find that the resultant housing accommodation was not in existence on the applicable base date. Such a finding may entitle the owner to charge a market ‘first rent’ ” (emphasis added). DHCR’s failure to use the word “shall” means that in interpret *518 ing the rent law statutes, it determined that in a rational exercise of its discretion, it might decline to find that the resultant housing accommodation was not in existence, despite a significant change in the perimeter of the existing housing accommodation as of the applicable base date.
The query, then, is — under what circumstance would it be rational for DHCR to so decline? Or, put another way, would it not be rational for DHCR to have so declined on the facts of the case at bar?
Not only would it have been rational for DHCR to have declined to make such a finding as to the apartment at issue here, but also it was, in fact, arbitrary and capricious for the Rent Administrator not to have done so. In not doing so, the Rent Administrator undermined its own “constructive occupancy” policy. The Rent Administrator’s ruling on July 1, 1999, that petitioner was not to be restored to physical occupancy of the subject apartment because such apartment no longer existed, hopelessly conflicts with its prior rent reduction order, which stated that petitioner was entitled “to be restored to occupancy of the subject apartment” on payment of $1 a month.
Respondent has not persuaded the court that it was rational for DHCR to determine petitioner had no right to pay rent calculated based upon her 20-year tenancy. This court agrees with the tenant that subjecting petitioner’s rent stabilization rights in her apartment to her ability in the first instance to pay market rent for another apartment would eviscerate such rights. Such a ruling sets poor precedent for what must be a paucity of tenants similarly and uniquely situated, so this court declines to so hold.
Adjudged that the petition is granted as follows: The determination of respondent New York State Division of Housing and Community Renewal, dated January 11, 2002, that affirmed that respondent is entitled to a “first rent” is vacated and annulled.

 The Rent Administrator held that the base date was August 20, 1995, the date four years prior to the filing of the complaint, which is undisputed.