In the Matter of CHURCH STREET APARTMENT CORP. et al., Appellants, v ROBERT ABRAMS, as Attorney-General of the State of New York, Respondent.

First Department, July 21, 1988

APPEARANCES OF COUNSEL

*Martin P. Mehler* of counsel *(Mehler & Buscemi,* attorneys), for appellants.

*Gerald J. Hurwitz* of counsel *(Robert Abrams, Attorney-General), pro se.*

**OPINION OF THE COURT**

SULLIVAN, J.

In this CPLR article 78 proceeding to compel the Attorney-

General to issue a letter stating that their cooperative conversion offering plan is accepted for filing, petitioners appeal from the dismissal of their petition.

On November 18, 1985, petitioners, Solomon Levine and Church Street Apartment Corp., the sponsor and proposed cooperative corporation, respectively, pursuant to General Business Law § 352-e (1), filed with the Attorney-General a plan to convert, on an eviction basis, a fee interest in a five-story building, located at 257 Church Street in Manhattan and owned by Levine, to cooperative ownership. The first floor of the premises is commercial space and, while part of the property to be owned by the cooperative corporation after the proposed conversion, would be rented to Levine, who, in turn, would sublet the space. The four upper floors consist of loft space and are residentially occupied. The second floor is occupied by Levine and is not being offered for sale under the offering plan. The third floor is occupied by a couple whose occupancy is protected and rent regulated under the Loft Law (Multiple Dwelling Law art 7-C).

The third-floor tenants objected to the plan, arguing that it was primarily intended to evict them through the collusive efforts of the sponsor; the fifth-floor tenant, his attorney; and the fourth-floor tenant, the attorney's son. The Attorney-General thereafter, by letter dated May 19, 1986, rejected the plan for filing, essentially because he concluded that 3 of the 4 residential apartments of the premises "are occupied by the sponsor or persons related to the sponsor". Petitioners were further informed that the plan would be accepted for filing as a noneviction plan. As a further ground for rejection, the Attorney-General also cited the nature of the lease the cooperative corporation was to extend to the sponsor for the first-floor premises.

In further correspondence with the Attorney-General, petitioners explained that the sponsor was not related by blood, marriage or adoption to any of the three tenants of the subject premises. In a series of phone calls which followed, representatives of the Attorney-General told petitioners' attorney that they would conduct a further investigation into the relationship between the sponsor and the tenants, including taking the latters' depositions. The tenants were never examined, however, even though their availability was made known to the Attorney-General and despite the repeated requests of petitioners' attorney that the depositions proceed. Without any further investigation, the Attorney-General issued a let-

ter, dated September 8, 1986, stating that in order to obtain the required percentage of subscriptions for acceptance of an eviction plan, i.e., 51%, the tenants would have to subscribe unanimously, since the unit occupied by Levine, the sponsor, could not be counted. In eliminating the sponsor's "purchase" from the count toward the 51% approval requirement, the Attorney-General cited his own regulation, 13 NYCRR 18.5 (e) (6) (vi) (c).[1] The Attorney-General further advised petitioners that, since all three remaining tenants would have to purchase, the plan, in essence, was a noneviction plan and would have to be converted accordingly.

In subsequent correspondence petitioners argued that, although occupying 1 of the 4 apartments, the sponsor was not a "bona fide tenant in occupancy" within the meaning of the statute and should not be counted as part of the base in computing the percentage of subscriptions, and that, in any event, his apartment was not being offered for sale. Petitioners further noted that the 63-year-old sponsor was an eligible senior citizen who should be excluded from the base on that ground as well. The Attorney-General, however, adhered to his determination, further illuminating his position in a letter dated September 18, 1986: "13 NYCRR 18.3 (r) (6) (ii) (a) states that *all* dwelling units are to be included in the base count except that two categories of dwelling units can be excluded: *vacant* units, or units occupied by eligible senior citizens or eligible disabled persons. The sponsor's unit falls into neither of these two categories, and therefore cannot be excluded from the base. In fact, if the unit were considered 'vacant' because the sponsor were not really residing there, there would be a warehousing problem. Therefore, the proper base number is four (4). Whether the unit is being offered for sale is irrelevant to this count." (Emphasis in original.)

Petitioners thereafter commenced this proceeding to compel the issuance of a letter, pursuant to General Business Law § 352-e (2), stating that the plan is accepted for filing. The Attorney-General moved to dismiss, arguing, *inter alia,* that he had properly determined that all three tenant-offerees would have to purchase for the eviction plan to be effective,

---

1. 13 NYCRR 18.5 (e) (6) (vi) (c) requires, in an offering plan: "a representation that no subscriber counted for purposes of declaring the plan effective is the sponsor or the selling agent, or is a principal of the sponsor or the selling agent or is related to the sponsor or the selling agent or to any principal of the sponsor or the selling agent by blood, marriage, or adoption, or as a business associate, an employee, a shareholder or a limited partner."

and that, thus, in truth, the offering was not an eviction plan, as any one tenant could defeat it. In response, petitioners argued that the Attorney-General lacked the authority to prejudge the outcome of the tenants' vote as a basis for rejecting a plan for filing, since the function of screening the prospectus was not to determine whether the plan would be effective but, rather, to insure full disclosure. Petitioners further argued that the Attorney-General's normal practice was to exclude the sponsor's apartment from the count entirely and that he departed from that procedure in this case in order to effectuate his antieviction plan bias.

■ The motion court denied the relief sought and dismissed the petition, finding that the rejection of the proposed offering plan was neither arbitrary nor capricious. In so ruling, the court validated the reasoning of the Attorney-General that all four apartments be considered as the base but that the sponsor's apartment be eliminated from the count towards approval of the plan. Thus, in order to obtain the requisite 51% approval, all three tenants would have to subscribe. Since each of the three tenants to whom the plan was addressed controlled the destiny of the offering as an eviction plan, the court found that nondisclosure of this aspect of the plan to be a valid basis for rejection. We reverse, reinstate the petition and grant the same to the extent of remanding the matter to the Attorney-General for further consideration.

■ Petitioners argue initially that the Attorney-General lacked the authority to reject a plan based on requirements applicable only to a consideration of the plan's effectiveness subsequent to the tenants' action in response to the filed offering. We reject this argument. Since the review process prior to filing is designed to eliminate material misrepresentation and deception (see, Matter of Whalen v Lefkowitz, 36 NY2d 75), it would plainly be misleading for the offering to state or even to imply that a nonpurchasing tenant would be evicted upon the plan's effectiveness, when the plan actually could not be effective without all the tenants opting to purchase. For example, in a two-unit building, the 51% approval requirement would mandate that both tenants purchase before an eviction plan could be effective. In such a case, the Attorney-General, in pursuit of the goal of plain speaking and full disclosure, would be acting within his authority in requiring the sponsor to call the plan what it effectively is, a noneviction plan, i.e., an eviction plan which cannot be adopted without each tenant's consent and participation.

■ Equally unavailing is the argument that the Attorney-General lacked the statutory authority to exclude the sponsor from being counted toward the 51% approval requirement or, alternatively, to bar the sponsor's utilization of his senior citizen status if his apartment were otherwise to be included in the base count. Laws of 1982 (ch 555), which imposed the 51% approval requirement (General Business Law § 352-eeee [2] [d] [i]) and the broad senior citizen's exemption without regard to income or length of residence (General Business Law § 352-eeee [1] [c]), was adopted to mitigate the evil of forcing nonpurchasing tenants from their homes in a tight rental market. While neither statutory provision directly addresses a situation where, as here, the sponsor occupies an apartment in the premises sought to be converted, that silence should not preclude the agency charged with the statute's implementation from adopting a policy and/or promulgating a regulation which prevents the sponsor from advancing an eviction plan by executing a purchase agreement as to his own apartment and having the exercise of that option count toward the approval requirement. Of course, the Attorney-General cannot, as petitioners note, promulgate a rule contrary to or beyond his statutory authority. *(See, Matter of Jones v Berman,* 37 NY2d 42.) But such a policy as is reflected in 13 NYCRR 18.5 (e) (6) (vi) (c), consistent with clearly expressed legislative intent, is reasonable. *(See, Matter of Howard v Wyman,* 28 NY2d 434.)

In any event, that administrative policy and/or regulation is not at issue here since the sponsor's apartment is not being offered for sale and, thus, will not be purchased and cannot be counted toward the 51% approval requirement. By the same token, even though both the statute and regulations are silent as to the specific issue, if the sponsor's apartment were otherwise includable in the base-denominator, the Attorney-General could properly interpret the senior citizen's exemption to be inapplicable to him since he is not faced with eviction, the risk against which this category of exemption was designed.

In our view, the crucial issue in this case is whether the Attorney-General may properly include the sponsor's apartment in the base-denominator count in determining if the 51% tenants' approval requirement of General Business Law § 352-eee (2) (d) (i) has been met. The Attorney-General maintains that he has uniformly interpreted the statute to require that all occupied dwelling units in the building be counted in

fixing the denominator. He further argues that for this purpose the bona fides of the sponsor's occupancy is never questioned, just as it never is in connection with the 10% limit on warehoused apartments, even though General Business Law § 352-eeee (2) (e) defines vacancy as "dwelling units not leased or occupied by bona fide tenants". The Attorney-General claims that the latter factor is significant here because if the sponsor's tenancy were not considered bona fide, and therefore excluded from the base-denominator count, his apartment would be deemed vacant, with a resulting 25% (1 out of 4) rate of warehousing, which would mandate rejection of the plan. Thus, the Attorney-General claims, he is being evenhanded in treating the sponsor as a bona fide tenant in both instances.[2]

As is quite obvious, however, the Attorney-General does not regard the sponsor as a bona fide tenant for all purposes, since he excludes the sponsor by his own regulation (13 NYCRR 18.5 [e] [6] [vi] [c]) from those whose subscriptions would count toward the 51% approval requirement. In reaching his conclusion that all three tenants, other than the sponsor, had to purchase to attain the requisite 51% approval, the Attorney-General calculated the base-denominator as four, so that a purchase by all three tenants would constitute 75% approval and a purchase by only two would amount to two quarters, or 50% approval, which is insufficient for acceptance of the plan. Thus, the sponsor is a "bona fide tenant" for purposes of increasing the base-denominator but not for the statutory exemption therefrom as a senior citizen or for purposes of inclusion as a purchaser in the numerator. Since the sponsor's purchase cannot count toward approval and, notwithstanding, his apartment is to be counted in the base-denominator, the Attorney-General is, in essence, counting the sponsor's apartment as against the conversion. That anomalous result was never within the contemplation of the Legislature and cannot be justified by an evenhanded administrative

---

2. Petitioners challenge the Attorney-General's contention that, subject to only two exceptions, eligible senior citizens and eligible disabled persons, he "has uniformly and historically read the statutory provision that 'at least fifty-one percent of the bona fide tenants in occupancy *of all dwelling units* in the building' to mean that the denominator for the fraction must be constituted of 'all dwelling units' in the building which are occupied." (Emphasis in original.) This record does indeed contain evidence that raises issues of fact as to whether the Attorney-General has uniformly and reasonably applied his rules and regulations, as well as administrative policy, in this regard.

policy. The decision to reject the plan on that basis was arbitrary and capricious as a matter of law.

Of course, a policy where the sponsor's apartment is excluded both in the numerator and denominator, in terms of approval and base count, would be acceptable. Here, that would dictate that the denominator be three. The eviction plan could then be effective even if any one of the other tenants decided not to purchase, as two-thirds approval is greater than the 51% which is required.

Since it appears that other obstacles to acceptance of the plan for filing may exist, such as the lease the cooperative corporation would extend to the sponsor for the commercial space on the first floor of the premises, we do not direct issuance of a letter accepting the plan for filing but, instead, remand the matter to the Attorney-General for further consideration.

Accordingly, the judgment of the Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered September 21, 1987, which denied and dismissed petitioners' article 78 petition, should be reversed, on the law, without costs or disbursements, the petition reinstated and the same granted to the extent of remanding the matter to the Attorney-General for further consideration, not inconsistent herewith, of the proposed offering as an eviction plan.

MURPHY, P. J. (dissenting). The facts are fairly set forth in the majority opinion.

I agree with that part of the majority opinion concluding that the Attorney-General may refuse to accept for filing a cooperative conversion offering plan which falsely represents that the offering is being made on an eviction basis. I also agree that the Attorney-General did not act beyond his authority in promulgating 13 NYCRR 18.5 (e) (6) (vi) (c), preventing a sponsor from advancing his own eviction plan by having his own subscription agreement count toward the number needed for approval. I am also in agreement that the sponsor in this case, Mr. Levine, is in no danger of being evicted from the apartment he owns in the subject building and is, therefore, not entitled to take advantage of the senior citizen's exemption, which exemption would exclude him from, and thereby enable him to reduce solely for the purpose of advancing his purported eviction plan, the base count, i.e., the total number of bona fide tenants in occupancy of all dwelling units, 51% of whom must execute subscription agreements for

an eviction plan to become effective. *(See,* General Business Law § 352-eeee [2] [d] [i].)

Having reached these conclusions, most particularly that the Attorney-General could validly promulgate a regulation preventing the sponsor from having his subscription count toward the total needed for eviction plan approval, and that the petitioner is not entitled to be excluded from the base count by reason of his advanced age, I am at a loss to understand how the majority then concludes that the Attorney-General has acted arbitrarily and capriciously in refusing to accept petitioner's plan as an eviction plan.

There is no question that petitioner Levine is not entitled to have his subscription count toward the number needed for approval because he is a principal of the sponsor (13 NYCRR 18.5 [e] [6] [vi] [c]), and, in any event, his apartment is not even included in the offering so there is no prospect of his executing a subscription agreement, much less of his agreement being counted towards approval. It is settled then that the bona fide tenants of only 3 of the 4 occupied units in the subject building will be able to have their subscriptions, should they execute them, count towards approval.

The question which divides the court and upon which this appeal turns, is whether the base count should be three or four. The sponsor claims, and the majority has held, that it should be three, in which case only two subscriptions will be necessary to constitute the 51% required for eviction plan approval. The Attorney-General maintains and I agree, that the proper base count is four, making the subscription of each of the three offeree tenants in occupancy necessary for approval of the plan. This latter view would effectively render the plan a noneviction plan since the refusal of any one tenant to execute a subscription agreement would necessarily cause the plan to fail.

General Business Law § 352-eeee (2) (d) (i) states quite clearly concerning eviction plans that, "(i) [t]he plan may not be declared effective unless at least fifty-one percent of the bona fide tenants in occupancy of *all dwelling units in the building* * * * (excluding, for the purposes of determining the number of bona fide tenants in occupancy * * * eligible senior citizens and eligible disabled persons) shall have executed and delivered written agreements to purchase under the plan pursuant to an offering made in good faith without fraud and with no discriminatory repurchase agreements or other dis-

criminatory inducements." (Emphasis supplied; *see also,* 13 NYCRR 18.3 [r] [6] [ii] [a].) Petitioner Levine does not seriously dispute that he is a bona fide tenant in occupancy in the subject building. Indeed, as the Attorney-General points out, if Levine were not a bona fide tenant in occupancy the plan would have to be rejected for failure to meet statutory anti-warehousing provisions, since the resulting long-term vacancy rate of 25% would be far in excess of the 10% limitation established by General Business Law § 352-eeee (2) (e). As Levine is a bona fide tenant in occupancy, General Business Law § 352-eeee (2) (d) (i) requires that his unit be included in the base count, unless he falls within one of the statutorily prescribed exemptions. The majority agrees that Levine may not take advantage of the senior citizen's exemption, but without citing any other applicable exemption would nevertheless have the Attorney-General exempt him, finding the Attorney-General's failure to do so arbitrary and capricious as a matter of law.

Not only do I think that the Attorney-General's inclusion of the petitioner's unit in the base count was proper, I think that his failure to include petitioner's unit would have been manifestly improper given the clear wording of the statute and the regulations promulgated pursuant thereto, the validity of which is not here challenged. I see no basis whatsoever for effectively requiring, by judicial fiat, that the Attorney-General exclude the petitioner's unit from the base count.

Contrary to the view expressed by the majority, the Attorney-General is not required to treat a sponsor-tenant as a bona fide tenant for all purposes. Indeed, the majority concedes that the Attorney-General properly promulgated 13 NYCRR 18.5 (e) (6) (vi) (c) preventing the sponsor from having his subscription count towards the total needed for approval, and so, implicitly acknowledges that some differential treatment of a sponsor-tenant in the context of an eviction plan is proper. The majority apparently feels, however, that when, in addition to preventing the sponsor from having his subscription count, the Attorney-General also includes the sponsor-tenant's unit in the base count, the differential treatment goes too far. Although the argument has some superficial appeal, it is important not to lose sight of the fact that the question before the court is not whether the Attorney-General's actions herein accord with our subjective notions of what is fair, but whether his actions have been arbitrary and capricious. It cannot be said that where, as here, the Attorney-General has

scrupulously followed the direction of the governing statute and regulations, that he has acted either arbitrarily or capriciously, even though what may be characterized as an "anomaly" results.

Moreover, an accurate perception of the reality of the present situation does not justify the view that the Attorney-General's action, if left undisturbed, will cause an anomaly or any great unfairness to be done the petitioner. All that is at stake in this case, at least from the petitioner's perspective, is the petitioner's claimed right to convert his building to cooperative ownership on an eviction basis; sustaining the position of the Attorney-General herein, will not prevent petitioner from converting his premises on a noneviction basis with much the same financial result as would obtain if the conversion were pursuant to an eviction plan. What is, therefore, plain is that petitioner's insistence upon proceeding with the conversion by means of an eviction plan is rooted in his desire to evict his third-floor tenants; he has a history of adversarial dealings with these tenants but thus far has been unable to dispossess them because they are protected under article 7-C of the Multiple Dwelling Law, otherwise known as the Loft Law. Petitioner incurs relatively little real detriment if nonpurchasing tenants are afforded every protection, consistent with the applicable statutes and regulations, against the extreme hardship eviction would work upon them. That is precisely what the Attorney-General has done in this case, and I can see no good reason—nor has this court articulated one—why the Attorney-General's action should not be upheld. The Attorney-General's action is particularly appropriate here where there is strong indication that specific tenants have been targeted for eviction for reasons that are questionable at best.

Accordingly, the judgment of the Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered September 21, 1987, which denied and dismissed the petitioner's article 78 petition, should be affirmed.

SANDLER, MILONAS and KASSAL, JJ., concur with SULLIVAN, J.; MURPHY, P. J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on or about September 21, 1987, reversed, on the law, without costs

and without disbursements, the petition reinstated and the same granted to the extent of remanding the matter to the Attorney-General for further consideration of the proposed offering as an eviction plan, not inconsistent with this court's opinion.