OPINION OF THE COURT
Alice Schlesinger, J.
Petitioners Metropolitan Movers Association, Inc., Advance Relocation & Storage Inc., All Season Movers, Inc., Business Relocation Services, Inc., Sher-Del Transfer and Relocation Services, Inc., and Universal Moving & Storage Co. have commenced this CPLR article 78 proceeding against respondent John C. Liu, the Comptroller of the City of New York (Comptroller). Petitioners challenge as unlawful the Comptroller’s July 1, 2010 determination of the prevailing wage schedule for movers providing services to City agencies under section 230 of the Labor Law. Respondent opposes, arguing that the Comptroller’s prevailing wage determination for movers was a lawful exercise of discretion afforded to him under the statute.
Facts
Under the New York State Labor Law, the Comptroller is tasked with promulgating a yearly schedule of prevailing wages and supplemental benefits for building service employees, including movers, who do business with the City of New York. The purpose is to set the wage rate that the employers must pay their employees when contracting to provide services to the City. Accordingly, on April 28, 2010, the Comptroller mailed out a survey to all known New York State licensed commercial moving industry employers operating in the City, requesting information such as number of employees, wages, and union affiliations for drivers and helpers. (Answer, exhibit A.) In his letter accompanying the survey, the Comptroller indicated that such information was sought for the purpose of determining the prevailing wage for building service employees. (Id.)
Using the union affiliation information from the surveys, the Comptroller prepared an analysis in which he calculated that *177 57% of the workers in the moving industry were nonunion, 31% of the workers belonged to Local 814 of the International Brotherhood of Teamsters (Local 814), and 12% belonged to Local 1212 of the United Service Workers Union, International Union of Journeymen and Allied Trades (Local 1212). (Answer, exhibit B.)[1] On June 1, 2010, the Comptroller published a preliminary wage schedule for movers based on Local 814’s collective bargaining agreement since, according to the Comptroller’s finding, the union represented at least 30% of the moving industry workforce.
The collective bargaining agreement referenced three groups of employees: industry A, industry B, and industry C employees (also known as casuals), with industry C employees receiving the lowest wages. (Mem in support of petition at 11.) The Comptroller’s preliminary schedule included a separate rate for industry C workers. However, on June 23, 2010, a representative of Local 814 wrote a letter to the Assistant Comptroller, requesting “that the Comptroller’s office not include the ‘Industry C’ category in its Prevailing Wage Schedule” because such employees were entry-level employees who generally required supervision and were not used unless the employer had exhausted its seniority list. (Petition, exhibit 8.)
On July 1, 2010, the Comptroller published the final prevailing wage schedule for all building service employees, excluding industry C employees, to be effective through June 30, 2011. (Petition, exhibit 1.) According to the final schedule, industry A drivers were to be paid $24.35 per hour and $14.55 per hour for supplemental benefits, totaling $38.90 per hour. Industry B drivers were to be paid $19.48 per hour and $13.55 per hour for supplemental benefits, totaling $33.03. Industry A helpers were to be paid $21.35 per hour plus $14.55 per hour for supplemental benefits, totaling $35.90. Lastly, industry B helpers were to be paid $17.08 per hour plus $13.55 in supplemental benefits, totaling $30.63.
Seeking to know the basis of this determination and the nature of the survey results, petitioners — the various companies that employ and pay the movers — requested various documents *178 from the Comptroller under the Freedom of Information Law, which they received on August 19, 2010. According to petitioners’ analysis of the Comptroller’s survey results, workers in the moving and storage industry earned far lower wages than those reflected in the schedule. For example, the survey results revealed that the average wage for movers was $19.19 per hour, the median wage was $15 per hour, and the most frequently received wage was $12 an hour. (Petition, exhibit 11.) Removing industry C employees from the prevailing wage schedule for movers increased the lowest prevailing wage from $12 an hour in 2007 and 2008, to $30.63 in 2010. (Petition, exhibits 13, 14.) According to petitioners, not only is the Comptroller’s 2010 schedule inconsistent with the survey results and his prior prevailing wage schedules, it is significantly higher than the federal prevailing wage schedule for movers, which ranges from $15.90 per hour for a material handling laborer to $20.14 per hour for a driver of a tractor-trailer.
Finding that the Comptroller’s schedule was inconsistent with his survey results, petitioners Metropolitan Movers Association, Inc., a not-for-profit association, and five moving companies commenced this article 78 proceeding challenging the Comptroller’s methodology for determining the prevailing wage schedule for movers. Petitioners now seek an order (1) setting aside the Comptroller’s prevailing wage schedule and his use of Local 814’s collective bargaining agreement as the basis for his determination; (2) declaring the prevailing wage to be based on “wages that are commonly and actually paid to movers”; and (3) ordering the Comptroller to use the United States Department of Labor’s prevailing wage schedule in lieu of his own determination.
Discussion
Petitioners contend that the Comptroller’s determination of the prevailing wage schedule for movers in New York City was irrational. In an article 78 proceeding, an administrative action can be set aside if it was made in violation of lawful procedure, was arbitrary or capricious, or was affected by an error of law. (CPLR 7803.) An action is arbitrary if it “is without sound basis in reason and is generally taken without regard to the facts.” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974].)
According to petitioners, the Comptroller incorrectly applied the definition of “prevailing rate of wage” that is found in sec *179 tion 220 of the Labor Law, as opposed to that found in section 230, the provision that is specifically applicable to building service employees such as movers. When construing a statute, the Court of Appeals has stated that “we seek to discern and give effect to the Legislature’s intent . . . and the starting point for accomplishing this is the statute’s language . . . .” (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 286 [2009] [citations omitted].) Where administrative action “ ‘runs counter to the clear wording of a statutory provision, it should not be accorded any weight.’ ” (Id. at 285, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].)
Article 8 of the Labor Law, originally promulgated in 1921, is entitled “Public Work” and covers “laborers, workmen, and mechanics,” but not building service employees such as movers. Section 220 (3) (a) of that article, entitled “Hours, Wages and Supplements,” provides that the wages to be paid to covered workers on City projects “shall be not less than the prevailing rate of wages as hereinafter defined.” Following the most recent amendment to this provision in 1983, the Legislature determined that “for the intents and purposes of this article,” the “prevailing rate of wage” shall be set based on a collective bargaining agreement covering at least 30% of employees in the industry. Specifically, subdivision (5) (a) states that the prevailing wage
“shall be the rate of wage paid in the locality, as hereinafter defined, by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work provided that said employers employ at least thirty per centum of workers, laborers or mechanics in the same trade or occupation in the locality where the work is being performed.”
Instead of amending article 8 to expand the scope of covered employees to include building service employees, the Legislature in 1971 adopted article 9, entitled “Prevailing Wage for Building Service Employees,” to expressly extend prevailing wage protections to building service employees. Article 9 was further amended in 1974 to expand the definition of “building service employee” to specifically include movers, as had already been the case under the analogous federal law, the McNamara-0’Hara Act. In contrast to article 8’s 30% formula, section 230 (6) of article 9 authorizes the Comptroller to set the wage, defining *180 “prevailing wage” as “the wage determined by the fiscal officer [who is the Comptroller in the City of New York] to be prevailing for the various classes of building service employees in the locality.”
Petitioners here insist that article 9, which obligates the Comptroller to determine the prevailing wage, is the only relevant provision that governs the prevailing wage rate for movers because it expressly includes movers, whereas article 8 refers to other types of employees. In response, the Comptroller argues that the specific mention of the 30% rule only in article 8 does not preclude its application under article 9 because the language in article 9 affords him broad discretion to adopt the 30% rule, even though it is not referenced. The Comptroller further contends that his use of the 30% rule is more efficient, accurate, and consistent, and serves “to harmonize the process for determining the prevailing wages of both Article 8 and Article 9 employees” by using the rule for both groups of employees. (Mem of law in support of respondent’s answer at 7 n 3.)
This court disagrees. Although article 9 does afford the Comptroller some degree of discretion, it does not authorize him to create harmony in a statute where harmony does not seem to be the Legislature’s intent. Particularly telling is the fact that the Legislature amended the definition of prevailing wage under article 8 to allow for the 30% rule for “the intents and purposes” of that article alone, but did not similarly do so under article 9, despite ample opportunity. Further, the legislative history of article 9 confirms that the Legislature knowingly set a different standard under article 9. For example, in recommending the adoption of article 9 in a memo issued in June 1971, Industrial Commissioner Louis L. Levine noted that
“[patterned after the Federal approach, the bill has several advantages over a bill adopting the prevailing wage procedure in the public work law [i.e., . article 8]. First, the provisions in the bill that leave to the administrative agency the defining of ‘prevailing wage’ and ‘locality’. . . avoid the exorbitant and probably prohibitive effort that would be required to proceed in accordance with the procedures of Article 8 of the Labor Law.” (Mem of Industrial Commr, Bill Jacket, L 1971, ch 777, at 4; see Comptroller’s mem, appendix A.)
A close look at the language of section 230 demonstrates that while the Legislature intended to give the Comptroller discre *181 tion to use various methods,[2] it also tasked the Comptroller with the specific responsibility of determining the wage rate “to be prevailing,” meaning the actual prevailing rate. Thus, while the Comptroller is not precluded from using collective bargaining agreements insofar as they assist him in determining the actual prevailing wage, he cannot simply substitute the 30% formula in article 8 to relieve himself of Ms broader obligations under article 9.
The federal approach under the McNamara-O’Hara Act provides some guidance here. Although the federal statute, 41 USC § 351 (1), expressly states that the prevailing wage can be determined “in accordance with the rates for such employees provided for in [a collective bargaining] agreement,” the governing federal regulations make clear that tMs approach may only be used when the wages and benefits in the agreement “have been determined to prevail.” (29 CFR 4.51 [a].) In other words, while the collective bargaining agreement can be considered some evidence of the prevailing wage, it is not dispositive, standing alone.
The inquiry here similarly cannot end with the collective bargaining agreement. A comparison of the rates in the Comptroller’s schedule alone demonstrates that he simply adopted the rates from Local 814’s collective bargaining agreement without any further inquiry as to whether these rateé accurately reflected the actual prevailing wage.
But, in fact, Local 814’s rates do not reflect the prevailing wage. Regardless of the measure used, whether it be the mean, median, or mode, the Comptroller’s schedule adopts significantly higher rates than those reflected by his survey results. While the Comptroller’s prevailing wage for movers ranges from $30.63 to $38.90 per hour based on seniority under Local 814’s agreement, the Comptroller’s own survey results reveal that workers in the moving industry, on average, receive a much lower wage of $19.19 per hour. The median wage, which is even lower than the average wage, is approximately $15 per hour.
It is particularly concerning that of the workers surveyed, approximately 80% received hourly wages lower than the low-end *182 of the Comptroller’s schedule, and approximately 96% of workers were paid wages lower than the high-end of the schedule. (Petition, exhibit 11.) The largest percentage of workers receiving wages comparable to those in the Comptroller’s prevailing wage schedule was less than 6% receiving a wage of $35.57. Instead, the majority of workers surveyed, about 55% received wages ranging from $8 to $18 an hour. Furthermore, the Comptroller’s decision to remove industry C employees from the prevailing wage schedule dramatically increased the lowest prevailing wage from $12 an hour in previous years to $30.63 in 2010. (Petition, exhibits 13, 14.)
The federal schedule, which more accurately resembles the Comptroller’s own survey results, is yet another example of how the Comptroller’s prevailing wage schedule drastically diverges from standard prevailing wage determinations. According to the United States Department of Labor’s 2010 schedule, movers are to be paid between $15.90 and $20.14 based on seniority. As petitioners correctly point out, the Comptroller’s prevailing wage schedule risks producing inconsistent and arguably absurd results, since a moving company awarded contracts on a municipal job, a private job, and a federal job would need to pay its workers twice as much for the municipal job as compared to the private and federal jobs.
The Comptroller’s claim that he used the 30% rule as a means of identifying the most frequently received wage, as opposed to the average, is also unconvincing since his own study reveals that the most frequently received wage was $12 per hour. (Petition, exhibit 11.) Based on an analysis of the survey responses received by the Comptroller relating to 2,334 workers, the largest single group consisted of 330 workers who received $12 an hour. The second and third largest groups consisted of 188 workers who received $15 an hour and 130 workers who received $10 an hour. Alternatively, only one worker reported receiving $38.90, the highest wage bracket in the Comptroller’s prevailing wage schedule. It is clear, based on the substantial difference between the Comptroller’s schedule and the results of his own survey, that he failed to fulfill his responsibility under Labor Law § 230 to determine the actual prevailing wage.
Alternatively, petitioners demonstrate that even if the Comptroller’s use of the 30% rule was proper, his application of this rule to calculate the prevailing wage was arbitrary and capricious because it was applied in an inconsistent fashion. Under article 8, the Comptroller is to determine the prevailing *183 wage for a particular trade based on the collective bargaining agreement between employers and the union where the employers employ at least 30% of the workers in that trade. (Labor Law § 220 [5] [a].)
In the instant action, the Comptroller counted all of Local 814’s employees, including its industry C employees, for the purpose of meeting the 30% requirement. However, at Local 814’s request, he excluded the much lower wages received by industry C employees for the purpose of calculating the prevailing wage schedule for movers. At the time of the survey, at least 106 of Local 814’s workers were categorized as industry C employees. Their exclusion reduced Local 814’s representation to approximately 26% of the moving industry’s workforce, which falls short of the 30% threshold under section 220 for use of a collective bargaining agreement to set the prevailing wage. (Petition, exhibits 9, 10, survey responses from Eagle Transfer Corporation and Capital Moving Storage.)[3] The Comptroller’s decision to include the industry C employees to reach the 30% threshold but not for his calculation of the prevailing wage schedule was improper.
According to the Comptroller, since article 9 only recognizes two levels of workers, the journeyman and the apprentice, the Comptroller need not publish a prevailing rate for industry C employees since they do not fall into either category. However, the question here is not whether the Comptroller has to publish a rate for industry C employees, a category that may only exist within Local 814’s membership, but rather which employees and wages should be included in the 30% figure in section 220 for purposes of calculating the prevailing wage. As respondent correctly notes, the utility of the 30% figure is that it allows the Comptroller to identify a consistent or commonly occurring wage for a particular industry. However, the exclusion of industry C wages from the calculation means that the 30% figure fails to represent a commonly occurring wage among 30% of the moving industry workforce.
In an analogous case, Matter of Church St. Apt. Corp. v Abrams (139 AD2d 280 [1st Dept 1988]), petitioners filed a plan with the Attorney General to convert a building to cooperative ownership on an eviction basis. Since the support of 51% of the tenants was required for approval, the question was whether the *184 sponsor of the plan was a bona fide tenant who would be included in calculating this percentage. The Attorney General rejected the plan, including the sponsor as a bona fide tenant in calculating the total number of people eligible to vote as tenants but then excluding the sponsor from the vote, thus distorting the voting results. {Id. at 286.) According to the First Department, the Attorney General’s inconsistent treatment of the sponsor in his calculations was arbitrary and capricious. The court’s conclusion, which is equally applicable to the case at hand, was that this type of “anomalous result was never within the contemplation of the Legislature and cannot be justified by an evenhanded administrative policy.” {Id. at 286-287.)
The Comptroller further argues that the exclusion of Local 814’s industry C employees presumably would not change Local 814’s 30% representation since he would also have to disregard industry C employees from the other unions, and assuming these are proportional, Local 814 would still represent 30% of the industry. As petitioner correctly asserts, this argument is purely speculative and respondent has failed to show that any unions other than Local 814 even include a similar category of workers. (Reply affirmation of Claude M. Millman, attorney for petitioners, 1Í 4.)
Accordingly, this court grants petitioners’ requests to set aside the Comptroller’s prevailing wage schedule for movers and to set aside his use of Local 814’s collective bargaining agreement as the sole basis for determining the prevailing wage schedule. The Comptroller must comply with the mandate of article 9 and determine the wage “to be prevailing,” meaning the actual prevailing wage. However, this court declines to determine the application of the prevailing wage determination to existing contracts, or to impose a specific approach such as the use of the United States Department of Labor’s schedule in place of the Comptroller’s own determination. It is not the role of this court to substitute its own judgment for that of the Comptroller. Pursuant to the statute, he is the individual responsible for determining the actual prevailing wage.
Lastly, petitioners also request that this court award incidental monetary relief as well as costs, interest, and reasonable attorneys’ fees under article 86 of the CPLR. Pursuant to CPLR 8601 (a), “a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that *185 special circumstances make an award unjust.” As neither party has addressed this issue, the request is denied.
Accordingly, it is hereby adjudged that this article 78 petition is granted to the extent that the Comptroller’s July 2010 prevailing wage schedule is annulled along with his sole use of Local 814’s bargaining agreement as the basis for his determination, and the matter is remanded to the Comptroller’s Office for a determination of the actual prevailing wage schedule for movers in accordance with section 230 of the Labor Law and the terms of this decision; and it is further ordered that petitioners’ request for a declaratory judgment defining the prevailing wage as that which is “commonly occurring” or set by the United States Department of Labor is denied; and it is further ordered that petitioners’ request for incidental monetary relief as well as costs, interest, and reasonable attorneys’ fees under CPLR 8601 is denied.

. Although the percentages cited above are taken from respondent’s papers, petitioners’ papers include slightly different percentages, which are apparently taken from documents received in response to their FOIL request. Based on their analysis, 56% of workers were nonunion, 30% of workers belonged to Local 814, and 13.5% of workers belonged to Local 1212. (Petition, exhibit 3, movers combined result.)

. Labor Law § 234 (1) (a) empowers the Comptroller
“to cause an investigation to be made to determine the wages prevailing in any locality in all crafts, trades and occupations involved in service work; in making such investigations, the fiscal officer may utilize wage and fringe benefit data from various sources including, but not limited to, data and determinations of federal, state or other governmental agencies.”

. That the Comptroller apparently accepted without question Local 814’s request to remove industry C employees from his calculation of the prevailing wage also raises concerns regarding the Comptroller’s decision making.