OPINION OF THE COURT
Michael C. Lynch, J.
In this combined declaratory judgment action/CPLR article *992 78 proceeding, plaintiffs/petitioners (hereinafter petitioners[1]) challenge certain regulations adopted by the Board of Regents on May 16, 2011 intended to implement the annual professional performance review of classroom teachers and principals pursuant to Education Law § 3012-c.
The parties agree that the enabling legislation was promulgated as part of the State’s initiative to obtain an award under the United States Department of Education (USDE) “Race to the Top” (RTTT) initiative challenging states to pursue comprehensive reform in their education systems. The parties further agree that they jointly developed the proposed legislation. The dispute centers on the interpretation of the statute through the challenged regulations.
Education Law § 3012-c was adopted on May 28, 2010, effective July 1, 2010, and established a new structure requiring annual performance evaluations of classroom teachers and building principals (see L 2010, ch 103). Shortly after the legislation was passed New York submitted a Phase II RTTT application. On August 24, 2010, the USDE announced that New York had been selected for an RTTT award of $696,646,000. The implementation process ensued.
By its terms, the enabling legislation directed respondents to develop implementing regulations, in consultation with an advisory committee representative of teachers and school districts, no later than July 1, 2011 (Education Law § 3012-c [7]). The statute further provides that performance reviews conducted after July 1, 2011 be based on this new program (Education Law § 3012-c [1]).
The submissions confirm that an advisory committee participated in the process for developing the draft regulations (see exhibit C annexed to answer). Ultimately, emergency regulations were adopted on May 16, 2011, effective May 20, 20ll[2] (see exhibit B annexed to answer). This challenge ensued.
*993 By order to show cause (Platkin, J.) dated June 27, 2011, and initially returnable July 11, 2011, petitioners applied for a preliminary injunction enjoining respondents from implementing certain of the adopted regulations. By letter order (Lynch, J.) dated July 22, 2011, a briefing schedule was established to allow the parties to submit dispositive motions by August 8, 2011. Oral argument was held on August 12, 2011.
To begin, the court finds that there is a present controversy for which petitioners have standing to pursue this challenge. The disputed regulations have an immediate impact on the statutorily mandated negotiation process in which petitioners clearly have a vested interest. Since the challenge is directed at the actions of the respondents, not the local school districts, the latter are not necessary parties.
Next, inasmuch as the parties have presented their respective dispositive motions, the court will directly address the merits of the case.
Pursuant to section 3012-c (2) (a), there are four rating categories utilized in the annual review: highly effective, effective, developing and ineffective. The Commissioner is authorized to prescribe minimum and maximum scoring ranges for each category. A single composite score must be established for each teacher/principal, “which incorporates multiple measures of effectiveness related to the criteria included in the regulations of the commissioner” (Education Law § 3012-c [2] [a] [emphasis added]).
This case centers on the annual review criteria for the 2011-2012 school year beginning with grades four to eight (Education Law § 3012-c [2] [b], [e]).* *[3] The statute provides for a review score of 100, with 40% based on the student achievement components defined in section 3012-c (2) (e); and 60% based on the evaluation component defined in section 3012-c (2) (h).
In reviewing this legislation it is important to recognize that prior to the enactment of section 3012-c, a determination to grant or deny tenure to a teacher could not be based on student performance data (see former Education Law § 3012-b, as repealed by L 2008, ch 57, part C, § 2 [eff July 1, 2010]). Under the new statute, the annual review must “include measures of student achievement” (Education Law § 3012-c [1]).
*994 Education Law § 3012-c (2) (e) provides for the inclusion of student achievement measures as follows:
“For annual professional performance reviews conducted in accordance with paragraph b of this subdivision in the two thousand eleven — two thousand twelve school year, forty percent of the composite score of effectiveness shall be based on student achievement measures as follows: (i) twenty percent of the evaluation shall be based upon student growth data on state assessments as prescribed by the commissioner or a comparable measure of student growth if such growth data is not available; and (ii) twenty percent shall be based on other locally selected measures of student achievement that are determined to be rigorous and comparable across classrooms in accordance with the regulations of the commissioner and as are developed locally in a manner consistent with procedures negotiated pursuant to the requirements of article fourteen of the civil service law” (emphasis added).
There is no dispute that the first 20% component is based on “student growth data” as measured by state assessments or comparable measures (for subjects that do not include state assessments). “Student growth” is defined as “the change in student achievement for an individual student between two or more points in time” (Education Law § 3012-c [2] [i]).
The dispute concerns the second 20% category, and calls into question section 30-2.4 (c) (3) (i) (d) of the regulations, which authorizes the use of “student achievement on State assessments” as a locally selected measure.
Petitioners maintain that the emphasized terms of section 3012-c (2) (e) preclude the use of all state assessments in the second 20% category. Respondents maintain there is no such prohibition, provided the determination is negotiated at the local level by the school district, and not compelled by the State. Respondents acknowledge that this definition would enable a local district to select the same test results utilized in the first 20% category for the second 20% category. Given the scoring range currently defined by the respondents at section 30-2.6 (a) (1) of the regulations and accepting respondents’ interpretation, a teacher or principal could be deemed “ineffective” on the basis of a single standardized state test.
The Regents is unquestionably invested with broad rulemaking authority concerning the State’s educational system, but *995 such authority must be exercised subject to and in conformity with the law of the state (Education Law § 207; see Moore v Board of Regents of Univ of State of N.Y., 44 NY2d 593, 602 [1978]). This controversy calls on the court to determine the meaning of the emphasized language in section 3012-c (2) (e). In my view, the statutory phrases “other locally selected measures of student achievement” and “developed locally” are not used in a technical sense and present a question of “pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; see Matter of Sbriglio v Novello, 44 AD3d 1212, 1214 [2007]).
The key here is the use of the qualifier “other” and the further requirement that this second 20% component be both “locally selected” and “developed locally” through the collective bargaining process. This language precludes the use of the assessment utilized in the first 20% category for the second 20% category. This is not, as petitioners maintain, a comprehensive preclusion against the use of state assessments. Rather, the specific exclusion is that a local district may not utilize the “student growth data on state assessments” required in the first 20% category in defining the second 20% category. To the extent other data can be derived from the state assessments to define a distinctly different measure of student achievement, such data may be utilized in formulating the second 20% category measure — provided this measure is developed locally through the collective bargaining process. This construction comports with the directive in section 3012-c (2) (a), which, excepting out the “student growth measures” prescribed in paragraph (e), directs that the “elements comprising the composite effectiveness score shall be locally developed, consistent with the standards prescribed in the regulations of the commissioner, through negotiations” in the collective bargaining process.
It follows that section 30-2.4 (c) (3) (i) (d) of the regulations is invalid only to the extent that the same “student growth measures” utilized to measure the first 20% category of section 3012-c (2) (e) may not be utilized to measure the second category. To allow the use of the same “student growth data” utilized in the first 20% category for the second 20% category conflicts with the statutory mandate that the annual review produces a “single composite teacher or principal effectiveness score, which incorporates multiple measures of effectiveness re *996 lated to the criteria included in the regulations of the commissioner” (Education Law § 3012-c [2] [a] [emphasis added]). In short, to allow a single state assessment measuring student growth to determine 40% of the student achievement category defined in section 3012-c (2) (e) would contravene this multiple measures mandate.
Also at issue are the regulations implementing section 3012-c (2) (h), which provides for the remaining 60 points as follows: “The remaining percent of the evaluations, ratings and effectiveness scores shall be locally developed, consistent with the standards prescribed in the regulations of the commissioner, through negotiations conducted pursuant to article fourteen of the civil service law” (emphasis added). Specifically, petitioners challenge section 30-2.4 (d) (1) (iii), which provides that in measuring this 60 point category
“at least 40 of these 60 points shall be based on classroom observations, which may be performed in-person or by video and shall include multiple observations by a principal or other trained administrator. Some of these points may also be based on one or more observations by independent trained evaluators or in-school peer teachers.”
Petitioners also challenge the qualifier in section 30-2.4 (d) (1) (iv) (c) that no more than 5 of the 60 points may be assigned to evidence that a teacher sets and pursues professional growth goals.
Petitioners contend that these regulations conflict with the mandate of section 3012-c (2) (h) that the evaluation measures for the 60 point category must be established through the collective bargaining process. Respondents counter that the regulations fall within the “standards” referenced in section 3012-c (2) (h).
The theme throughout section 3012-c is that except for the first 20% category discussed above, the remaining 80 points must be established through collective bargaining (Education Law § 3012-c [2] [a], [e] [ii]; [h]; [8]). Petitioners contend, and the court concurs that the “standards” referred to in section 3012-c (2) (h) are the teaching standards by which a teacher’s performance is measured. Those very standards are outlined in section 30-2.4 (d) (1) (i) (a)-(f) of the regulations. The concept of “classroom observation” is an evaluation method, not a standard for defining what makes a teacher a good teacher. Similarly, the assignment of a point value to a specific measure of teacher *997 performance is the stuff of evaluation, not a standard that may be pronounced by respondents. Whether and to what extent classroom observation and professional growth are utilized in defining the 60 point evaluation component must necessarily be determined through negotiations as required under section 3012-c (2) (h). Both the regulations challenged here are precluded by the statute and, thus, invalid (Matter of Jones v Berman, 37 NY2d 42, 53 [1975]).
Petitioners also challenge section 30-2.12 of the regulations, which provides for the Education Department to monitor the new evaluation system and order a corrective action plan, including a requirement to utilize independent evaluators, where appropriate (8 NYCRR 30-2.12 [b]). In his May 12, 2011 “Summary” addressed to the Board of Regents, the Commissioner explained that “[t]he Department will annually monitor and analyze trends and patterns in teacher and principal evaluation results and data to identify districts, BOCES and/or schools where evidence suggests that a more rigorous evaluation system is needed to improve educator effectiveness and student learning outcomes.” (See exhibit A annexed to answer.) Petitioners challenge this provision as an intrusion on the collective bargaining process embraced under section 3012-c and outside the Board of Regents’ authority (see Moore v Board of Regents of Univ of State of N.Y., 44 NY2d 593, 602-603 [1978], supra). Respondents counter that the provision is within its authority to enforce the governing regulations, pursuant to Education Law § 308. Respondents further assert “that the identity of the evaluator is a management prerogative and as such is not a mandatory subject of collective bargaining” (see affidavit of John King, dated July 14, 2011, If 103).
Actually, as discussed above, but for the first 20% component, the evaluation process defined in section 3012-c is subject to collective bargaining — a mandate that certainly embraces the identity of the evaluator. To the extent section 30-2.12 (b) authorizes the Department to appoint independent evaluators, it conflicts with section 3012-c. The Commissioner does, however, have the authority and obligation to enforce the provisions of the Education Law and regulations (Education Law § 308). Accordingly, this court finds that the regulation is valid, except as noted above.
Petitioners further challenge section 30-2.11 (b) of the regulations providing that the appeals procedure attendant to the evaluation process “shall provide for the timely and expedí *998 tious resolution of any appeal.” Education Law § 3012-c (5) expressly provides that “[t]he specifics of the appeal procedure shall be locally established through negotiations” (emphasis added). The challenged regulation speaks to a general objective of a timely appellate process, not the specifics of that process. As such the regulation is valid.
Petitioners also challenge sections 30-2.1 (d) and 30-2.11 (c) of the regulations, which asserts the local school district or BOCES retains the authority “to terminate probationary teachers or deny tenure to a probationary teacher during the pendency of an appeal pursuant to this section.” Essentially, respondents maintain that section 3012-c does not pertain to decisions to terminate a probationary teacher or deny tenure— while recognizing the statute does apply to determinations to grant tenure. The statute makes no such distinction. By its terms, the statute states that annual reviews performed after July 1, 2011 must comply with the new evaluation system (Education Law § 3012-c [1], [3]). Pertinent here, “[s]uch annual professional performance reviews shall be a significant factor for employment decisions including but not limited to, promotion, retention, tenure determination [and] termination” (Education Law § 3012-c [1] [emphasis added]). The emphasized terms clarify that tenure determinations, which include both the granting and denial of tenure, must be performed in compliance with the statute. To the extent these regulations provide otherwise, the regulations are invalid.
Finally, petitioners challenge section 30-2.6 (a) (1) of the regulations setting forth the scoring ranges used to rate a teacher’s effectiveness, as reflected in the following chart:
Measures of Local Measures Overall
Student of Student Other Composite
Level Growth Achievement 60 Points Score
Ineffective 0-2 0-2 0-64
Developing 3-11 3-11 65-74
Effective 12-17 12-17 Ranges determined 75-90
Highly Effective 18-20 18-20 locally 91-100
The statute authorizes the commissioner to prescribe “explicit minimum and maximum scoring ranges for each category” *999 (Education Law § 3102-c [2] [a]). Petitioners contend the regulation arbitrarily assigns a disproportionate weight to the 40% student achievement measures. By rating a teacher with a composite score under 65 as “ineffective,” the regulation allows for an “ineffective” rating based solely on poor student achievement results (the first 40% category) without regard to the 60% evaluation category. Petitioners maintain this outcome is contrary to the statute’s mandate that the composite score incorporate multiple measures of effectiveness (Education Law § 3012-c [2] [a]). Respondents counter that a teacher who receives an ineffective rating on both of the student achievement categories (i.e., the first 40%) should be deemed ineffective. Their stated premise is that “a rational and reasonable evaluation system must assure that teachers actually improve student achievement.” (Respondents’ mem of law, dated July 5, 2011,11 42.)
The Commissioner’s authority to prescribe the minimum and maximum scoring ranges for each rating category is qualified by the mandate that the composite score embrace the “multiple measures” requirement of the statute. The current structure measuring “ineffective” by a combined score under 65 allows for a teacher and/or principal to be deemed “ineffective” solely on the basis of poor student achievement. As shown on the chart, in an instance where students fail to improve a teacher would receive a score no higher than four points. Even if that teacher otherwise received a perfect 60 point scoring on the other evaluation category, that teacher would be deemed “ineffective.” In this situation, the 60 point category defined in section 3012-c (2) (h) becomes academic. While respondents assert that the statute mandates actual improvement in student achievement, as measured in the 40% student achievement category, the statute includes no such mandate. Since multiple measures must be considered, the scoring ranges developed by the Commissioner must allow for the 60 point category to have meaningful impact in the composite score, even in an instance of poor student achievement. That, frankly, is precisely what the draft regulations achieved in measuring the “ineffective” category by a score of 50 and under. While respondents may well be correct in asserting that a teacher would rarely be classified as “ineffective” based solely on poor student achievement as measured in the 40% category, that prospect renders the regulation invalid.
*1000 Accordingly, based on the foregoing, it is ordered and adjudged that the petition is granted in part; and it is further adjudged and declared that, to the extent set forth above, the regulations at 8 NYCRR 30-2.4 (c) (3) (i) (d); 8 NYCRR 30-2.4 (d) (1) (iii), (iv) (c); 8 NYCRR 30-2.12 (b); 8 NYCRR 30-2.1 (d); 8 NYCRR 30-2.11 (c); and 8 NYCRR 30-2.6 (a) (1) are invalid; and it is further ordered and adjudged that in all other respects, the petition is denied.

. Petitioners are the New York State United Teachers, a labor union representing approximately 600,000 in-service and retired teachers and school related professionals (see verified complaint/petition If 5), three affiliated local labor unions, and their respective presidents. The presidents of each local union are also tenured classroom teachers.

. At oral argument, counsel advised that the regulations were published in the State Register on June 8, 2011, and would become effective after the 45-day comment period on July 23, 2011. Notably, the regulations account for the prospect that full implementation must await the completion of the collective bargaining process. Section 30-2.3 (a) (1) of the regulations requires each local school district to adopt a plan of implementation by September 1, 2011, *993 which plan is required to identify the items not yet resolved. The school districts are authorized to “file an amended plan upon completion of such negotiations” (NY Reg, June 8, 2011, at 13).

. The statute calls for the annual review of all classroom teachers in the 2012-2013 school year (Education Law § 3012-c [2] [c]).